L. L. STATON v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 12 March, 1907).

1. **Removal of Cause—Joint Defendants—Several Liability—Single Action—Federal Court.**—Two defendants participating in the commission of a tort to the injury of the plaintiff are jointly and severally liable, and when the plaintiff has proceeded against them in a single action, the cause is not separable, and cannot be removed by a foreign defendant to the Federal Court, though different answers may be made and different defenses relied upon.

2. **Complaint—Domicile—Descriptive Words.**—In the petition for the removal of a cause to the Federal Court, the defendant describes itself as a certain railroad company, and the complaint alleges that it is a certain "railroad company, of Virginia"; the punctua-tion, by comma, being, as shown, between the word "company" and the words "of Virginia," the latter words are construed merely as descriptive of the domicile.

3. **Evidence—Corporation Commission Reports—Public Records—Judicial Notice.**—Reports of the Corporation Commission of North Carolina are matters of public record, of which the courts therein will take judicial notice.

4. **Removal of Cause—Federal Court—State Court—Jurisdiction.** For the purpose of jurisdiction a corporation is a citizen and resi-dent of the State creating it, and cannot remove a suit to the Federal Court upon the ground of diversity of citizenship by actual and authorized consolidation with a foreign corporation

and a change of its principal place of business, or domicile, to another State, prior to the commencement of the action.

5. **Removal of Cause—Charter Provisions—Jurisdiction Retained— Domesticating Act.**—A corporation existing under an amended charter conferring powers to consolidate with other corporations, and containing a provision retaining jurisdiction in the courts of the State granting it, cannot, by prior consolidation with a foreign corporation and the change of its principal place of business to another State, remove a suit to the Federal Court upon the ground of diversity of citizenship, such jurisdictional provision being materially different from a corporation filing its charter with the Secretary of State under an act requiring such to be done for the purpose of conferring jurisdiction in such suits upon the State courts.

MOTION of defendant to remove a civil cause from the State to the Federal Court, heard before *Cooke, J.,* in the Superior Court of EDGECOMBE County, October Term, 1906. From a judgment refusing the motion, defendant appealed.

The plaintiff alleged that during the year 1760 one Joseph Howell conveyed to trustees a tract of land to be laid off into streets and lots for the purpose of establishing a town; that a town common of not less than fifty acres should be reserved for the use of the citizens of said town; that thereafter the said land was surveyed and streets and lots laid off, and fifty acres set apart for a town common; that a map of the lots, streets and common was made and duly recorded in the office of the Register of Deeds of Edgecombe County; that on 30 November, 1760, an act was passed by the Governor, Council and Assembly incorporating the town of Tarboro, and the said trustees constituted directors or trustees of the town; that thereafter, 18 November, 1786, the General Assembly enacted that a map, plan and survey of the town, showing the lots, streets and portion reserved as a town common, then made under the direction of the Town Commissioners and filed in the office of the Secretary of State and of the Board of Commissioners of the town, should be ever

thereafter held and deemed to be the bounds and plans of the town; that by the Act of 1852, the General Assembly authorized the Commissioners of the town to lay off into lots and streets, in conformity with the plan of the town as then established, the whole or any portion of the common lying on the western side thereof between the inhabited portion thereof and Hendricks Creek, the western boundary of the town, and to sell such lots; that pursuant to said act Wilson Street was extended 70 feet wide to said creek; that parallel to Albemarle Avenue and west of it, Hendricks Street was laid off and dedicated to the use of the public; that the lot formed by the intersection of said streets was numbered 122, as shown on the map, and was sold pursuant to the authority conferred by said act; that said lot was subsequently purchased and is now the property of the plaintiff, being used with a dwelling-house thereon as a residence for himself and family; that the plaintiff, relying upon the provisions of the deed of Howell to the trustees, and the acts of Assembly aforesaid, and believing that said streets and common would continue to be used only for the purposes to which they had been dedicated, purchased said lot and made valuable improvements thereon, aggregating the sum of $6,000; that surrounding said lot are valuable shade trees; "that the Atlantic Coast Line Railroad Company, of Virginia, is now and has been, at the times mentioned, a corporation organized and existing under and by virtue of the laws of the State of Virginia and operating a steam railroad in the State of North Carolina subject to the laws of said State, which runs through Edgecombe County"; that the defendant, the East Carolina Railroad Company, is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of North Carolina, and operating a steam railroad in said State; that without the consent of

the plaintiff and without any lawful right or authority, the Atlantic Coast Line Railroad Company, of Virginia, is maintaining and operating a steam railroad in and along Albemarle Avenue upon a track within twenty-nine feet of the plaintiff's residence; that during the year 1889, without legal right or authority and without the consent of the plaintiff, the said defendant constructed and has since maintained and operated a railroad leading from Albemarle Avenue, north of Wilson Street, crossing diagonally across Wilson Street in front of the plaintiff's premises, and down said street to a point west of the plaintiff's premises on Wilson Street; that in 1902, the said defendant, without the consent of the plaintiff and without lawful authority, constructed and has since maintained other tracks, spur-tracks, etc., in front of the plaintiff's premises, crossing the side-track within two feet of his fence; that said defendant has built and maintains a track on said common; that the defendant the East Carolina Railway Company, without the consent of the plaintiff, and without lawful authority, is maintaining and operating in and along Albemarle Avenue a steam railroad track under an agreement or arrangement with the Atlantic Coast Line Railroad Company, of Virginia; that the East Carolina Railway Company is owned or controlled by and operated in conjunction with the Atlantic Coast Line Railroad Company, of Virginia, by an agreement between them.

The plaintiff sets out at much length the several acts and doings of the defendants respecting the moving of cars, loading and unloading freight, and otherwise annoying his family, disturbing their peace and preventing them from resting and sleeping at night, thereby injuring their health and creating a private nuisance. He also avers that, without lawful authority, the authorities of the town of Tarboro

intend to sell the common in front of the plaintiff's premises to the defendant the East Carolina Railway Company for the purpose of establishing a depot; that the building of another track on Albemarle Avenue will necessarily appropriate that part of the avenue from the Atlantic Coast Line track to the plaintiff's sidewalk, and completely deprive the plaintiff of all use of said street, and renders ingress and egress to and from his premises dangerous and practically impossible; that there is not now so much as fifty acres of the common reserved, and if the common is permitted to be sold for railroad purposes, its value for any other purpose will be destroyed and the plaintiff deprived of his easement therein. Because of the trespass and wrongs set out, the plaintiff demands judgment for damages, and to prevent further injury and interference with his easement and rights in the premises he asks injunctive relief.

An order was made by *Judge Cooke* requiring the defendants to show cause why a restraining order should not be issued. The defendant the Atlantic Coast Line Railroad Company, of Virginia, within the time required by law, filed its petition for removal, for that "the defendant the Atlantic Coast Line Railroad Company is not a domestic corporation, but is a foreign corporation created under and by virtue of the laws of the State of Virginia, and is a citizen of Virginia and is not a resident or citizen of the State of North Carolina; (2) that at the time the plaintiff instituted his said suit, to-wit, 26 September, 1906, and long prior to said time, the said defendant was and is now a foreign corporation, as stated in the preceding paragraph, and a citizen of the State of Virginia; (3) that the plaintiff, L. L. Staton, is a citizen and resident of the State of North Carolina"; that the amount in controversy is the sum of $10,000, and the controversy between the petitioner and the

said plaintiff is separable from the controversy between the plaintiff and the co-defendant the East Carolina Railway Company. The petition is verified and accompanied by the undertaking required by statute. The Court denied the petition and refused to remove the case. Defendant excepted and appealed.

*G. M. T. Fountain* for plaintiff.
*John L. Bridgers* for defendant.

CONNOR, J., after stating the case: The record presents two questions for decision: 1. Is the defendant Coast Line Railroad Company, of Virginia, a foreign corporation? 2. Is the controversy, set out in the complaint, separable as between the plaintiff and the two corporations? It will be convenient to dispose of the second question first. The Removal Act of 1887, sec. 2, provides that only those suits may be removed, by reason of diverse citizenship, when the controversy is wholly between citizens of different States. A large number of decisions are to be found in the State and Federal Reports in which the term "separable controversy" is discussed. It is not always easy to say upon which side of the line dividing those cases, in which for this cause suits may be or may not be removed, any given case falls. The tendency of the courts has been to narrow the line of cases which are removable under the act. The petitioner is required to comply strictly with the provisions of the statute, and bring the case clearly within its terms. Hughes on Fed. Proc., 302.

To constitute a separable controversy "the action must be one in which the whole subject-matter of the suit can be determined between the parties to the separable controversy, without the presence of the other parties to the suit. Moon on Removal of Causes, sec. 140. The question in respect to

the separability of the controversy must be determined upon
an examination of the plaintiff's complaint. Allegations in
the petition respecting the defenses of the several defendants
are not to be considered.

In *C. & O. Ry. Co. v. Dixon,* 179 U. S., 131, *Fuller, C.
J.,* says: "It is conceded that if an action be brought on a
joint cause of action, it makes no difference that separate
causes of action may have existed on which separate actions
might have been brought; and furthermore, it makes no
difference that in a suit on a joint cause of action a separate
recovery may be had against either of the defendants." The
learned *Chief Justice* cites with approval from *Powers v.
C. & O. Ry. Co.,* 169 U. S., 92: "It is well settled that an
action of tort, which might have been brought against many
persons, or against any one or more of them, and which is
brought in a State court against all jointly, contains no sep-
arate controversy, which will authorize its removal by some
of the defendants into the Circuit Court of the United
States, even if they file separate answers and set up different
defenses from the other defendants, and allege that they are
not jointly liable with them, and that their own controversy
with the plaintiff is a separate one, for, as this Court has
often said, 'a defendant has no right to say that an action
shall be severable which the plaintiff seeks to make joint; a
separate defense may defeat a joint recovery, but it cannot
deprive a plaintiff of his right to prosecute his suit to final
decision in his own way. The cause of action is the subject-
matter of the controversy, and that is, for all purposes of the
suit, whatever the plaintiff declares it to be in his plead-
ings.' " In that case the defendant railway company and its
employees, in charge of its train, were sued jointly for
injury to the intestate of the defendant in error. The em-
ployees being residents of the State of Kentucky, the Su-

preme Court sustained the Court of Appeals of Kentucky in denying the petition for removal.

*Bellaire v. B. & O. Railroad Co.,* 140 U. S., 117, was a proceeding by the plaintiff municipal corporation of the State of Ohio to condemn a right-of-way over certain land in which defendant corporation had an interest, together with the other defendants. The railroad company, a Maryland corporation filed its petition for removal on account of diverse citizenship. *Mr. Justice Gray* said: "The object of the suit was to condemn and appropriate to the public use a single lot of land. * * * The cause of action alleged, and consequently the subject-matter of the controversy, was whether the whole lot should be condemned; and that controversy was not the less a single and entire one because the two defendants owned distinct interests in the land and might be entitled to separate awards of damages. The ascertaining of those interests and the assessment of those damages were but incidents to the principal controversy divisible by itself, apart from the right of the other defendants and from the main issue between both defendants on the one side and the plaintiff on the other." *Kohl v. U. S.,* 91 U. S., 367; *Winchester v. Loud,* 108 U. S., 130. "When several persons participate in the commission of a tort, the cause of action accruing to the injured party is joint and several, in the sense that he will have his option to proceed against one or more of the *tort-feasors* separately or to join them all as defendants in one suit. But if he elects to treat the liability of the defendants as joint, and proceeds against all of them in one action, it will be regarded as involving but one single controversy between the plaintiff on the one side and all the defendants on the other side, and no one of the defendants can remove the cause to a Federal Court on the averment that it contains a separable controversy between

the plaintiff and himself alone." Black's Dillon on Removal of Causes, sec. 146; *Pirie v. Tvedt,* 115 U. S., 41; *Sloan v. Anderson,* 117 U. S., 275; *Little v. Giles,* 118 U. S., 596.

In *Torrence v. Shedd,* 144 U. S., 527, it is said: "Not only in cases of joint contracts, but in actions for torts which might have been brought against all or against any one of the defendants, separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies. A defendant has no right to say that an action shall be separable which a plaintiff elects to be joint. * * * The cause of action is the subject-matter of the controversy, and that is, for all purposes of the suit, whatever the plaintiff declares it to be in his pleadings."

The controversy which the plaintiff, according to his complaint, has with the defendants grows out of his alleged easement or rights in the streets upon which his dwelling is located, and the town common in front of his dwelling, by virtue of the trusts declared in the deed from Howell to Moir and others, and subsequent acts of the General Assembly, and the alleged trespass upon or wrongful interference with such rights for which he claims damages. In addition to this cause of action, he says that the interference is continuous; that other and further acts are threatened by said corporations, for the prevention of which he asks injunctive relief. While he sets out, at length, the acts and conduct of the several defendants, he alleges that they are operating and maintaining their roads, in the matter of which he complains, pursuant to an existing agreement between them, and that the defendant the East Carolina Railroad Company is

owned or controlled by the other defendant, the Atlantic Coast Line Railroad Company.

It is manifest that the alleged wrongs of which he complains, and the continuance of which he seeks to prevent, are inflicted by the acts of both defendants, and for the purpose of this discussion pursuant to an agreement between them. It requires neither argument nor authority to show that if two railroad companies, by agreement, but each using separate tracks and cars, entered upon and occupied plaintiff's premises, without legal right or authority, he would have a right of action against them jointly. If A and B, by an agreement so to do, drive their horses and wagons upon my land, can there be any question that I may join them in one action for damages, and certainly before they have done so, I may maintain a bill, assuming that I have a right to invoke injunctive relief against them jointly to restrain the threatened trespass. It will be no answer to my action to say that they may have been sued separately. I am entitled to so join them that at the end of the litigation I am compensated in damages or protected against further interference against both the joint wrong-doers.

We express no opinion upon the merits of the controversy. Assuming the truth to be as alleged, and that the complaint states either an actionable injury or threatened illegal interference with plaintiff's rights, we are of the opinion that he is entitled to prosecute his action against the defendants jointly, and that, therefore, the controversy is not, for the purpose of removal, separable. The second question raised by the record is of more difficulty because of the allegations in the complaint and condition of the record.

It is alleged that the petitioning defendant, called in the pleadings "the Atlantic Coast Line Railroad Company, of Virginia," is "a corporation organized and existing under

and by virtue of the laws of the State of Virginia." We note that the words "of Virginia" are separated from the word "Company" by a comma. We supposed that the plaintiff referred to and was prosecuting his action against the corporation created by chapter 77, Public Laws 1899, under the corporate name of "The Atlantic Coast Line Company of Virginia," but upon close inspection of the record it appears that the words "of Virginia" are intended to be descriptive of the domicile of the defendant corporation, "the Atlantic Coast Line Company." This construction is sustained by reference to the petition, in which the corporation describes itself as "the Atlantic Coast Line Railroad Company." The report made to the Corporation Commission, a public record of which we must take judicial notice, *State v. Railroad,* 141 N. C., 846, states that the "Atlantic Coast Line Railroad Company" is "made up" or composed of a number of "constituent companies" in the States of Virginia, North Carolina, South Carolina, Florida, Georgia, and Alabama. It is further stated that the organization and consolidation is made under the laws of the "State of Virginia." The report further states that the charter under which the consolidation in North Carolina is made is the "act of General Assembly of North Carolina, approved 24 February, 1899." By referring to this act we find it to be "An act to amend and re-enact chapter 284 of the Laws of 1893, concerning the Wilmington and Weldon Railroad Company, and to authorize that company to change its name to the Atlantic Coast Line Railroad Company of North Carolina." The act, re-enacting the Act of 1893, conferred upon the Wilmington and Weldon Railroad Company power to consolidate with any other railroad company and to permit any other railroad company, organized under the laws of this State, having power to consolidate, to do so

with said Wilmington and Weldon Railroad Company. It is expressly provided that this act shall not have the effect of ousting the jurisdiction of the courts of this State over causes of action arising in this State. The act ratified 24 February, 1899, confers upon the Wilmington and Weldon Railroad Company power "to consolidate or merge its railroads with, or to buy or lease the railroad or railroads of any other railroad company with which it may connect, either directly or indirectly, organized under the laws of this State or of any adjoining State, which, under the laws of this or such other State, may have power to consolidate, merge, sell, or lease its road; and any such other company shall have the right to consolidate, merge, sell, or lease its railroad in whole or in part, with or to the Wilmington and Weldon Railroad Company," etc. The act contains a proviso that such railroad, etc., shall be liable to taxation in this State, and a further proviso that "This act shall not have the effect of ousting the jurisdiction of the courts of this State over causes of action arising within this State: *Provided further,* that any and all corporations consolidated, leased or organized under the provisions of this act shall be domestic corporations of North Carolina, and shall be subject to the laws and jurisdiction thereof." Section 2 confers upon the Wilmington and Weldon Railroad Company power to change its name to the "Atlantic Coast Line Railroad Company of North Carolina." The report to the Corporation Commission states that the consolidation was completed 1 July, 1902. Prior to 1873 the Williamston and Tarboro Railroad extended from Tarboro in this State to Williamston. The Seaboard and Raleigh Railroad Company was chartered by act of General Assembly, 1873-74, ch. 46, with power to purchase the Williamston and Tarboro Railroad Company. Section 18, ch. 46. Thereafter, Laws 1883, ch.

48, the Seaboard and Raleigh Railroad Company was au-
thorized to change its name to the Albemarle and Raleigh
Railroad Company. The report made to the Railroad Com-
missioners by the Wilmington and Weldon Railroad Com-
pany (1894, page 58) states that the "Albemarle and Ral-
eigh Railroad Company, from Tarboro to Plymouth, con-
solidated with the Wilmington and Weldon Railroad Com-
pany and operated as a prolongation of the Tarboro Branch."
The Wilmington and Weldon Railroad Company, after 1894
and up to and including the year 1899, reported to the Com-
mission as a separate corporation (Report 1899, p. 82), in-
cluding the branch from Rocky Mount to Plymouth. For
the year 1900 "the Atlantic Coast Line Railroad" makes a
report to the Commission (p. 98) showing "Property Ope-
rated"—a large number of railroads, including, although the
mileage is distributed differently, the Wilmington and Wel-
don Railroad and its branches. There is nothing in any of
these reports indicating in what State the "Atlantic Coast
Line Railroad Company" is incorporated, except the state-
ment that the consolidation was made under the laws of Vir-
ginia. In the absence of any other statute of public record
showing any change in the domicile of the defendant cor-
poration, we look to the act ratified 24 February, 1899, in
which the General Assembly conferred the power upon the
Wilmington and Weldon Railroad Company to consolidate,
etc., expressly providing that "any and all corporations con-
solidated, leased or organized under the provisions of this
act shall be domestic corporations of North Carolina and
subject to the laws and jurisdiction thereof." If this pro-
vision is valid, it would seem that no power is conferred
upon the domestic corporation, chartered by the General
Assembly of this State during the Session of 1833, to change
its domicile or become, for any purpose, a foreign corpora-
tion.

It is elementary that a corporation is to be deemed a resident, or citizen, of the State in which it is created—its domicile of origin or creation. Clark on Corp., sec. 74. "The residence of a corporation is in the sovereignty by which it was created. It must dwell in the place of its creation and cannot migrate to another sovereignty." 7 Am. and Eng. Enc., 694. This is plain enough, but when, by permission of the sovereignty of its creation, it consolidates with a corporation of another sovereignty, difficult and sometimes perplexing questions regarding its relation to the two sovereignties arise.

The statutes and public records show that the Wilmington and Weldon Railroad Company, a domestic corporation, has by permission of the Legislature become one of "the constituent roads" in a line of consolidated railways extending through six States. In the consolidation are a large number of other "constituent roads." To say that each of these roads, chartered in six different States from Virginia to Alabama, have, by the consolidation, become citizens of the State of Virginia, is rather startling. If this result, so far as the Wilmington and Weldon Railroad Company is concerned, has been accomplished by virtue of the power conferred by the Act of 1899, ch. 105, in defiance of the express provision in the statute that it should continue a domestic corporation, it would indicate an absence of power in the Legislature to guard the sovereign rights of the State in respect to corporations of its own creation. It would seem perfectly clear that a railroad corporation has no power to change its domicile. While the Legislature may permit a Virginia corporation to come into this State and consolidate with one of her own corporations, we cannot perceive how, in availing itself of such permission, the Virginia corporation may take the North Carolina corporation out of

this State into Virginia and so adopt it that the State, by virtue of whose laws it came into existence and continues to exist, loses jurisdiction of it for the purpose of bringing it into her courts to answer for wrongs done her own citizens. While we do not concede that such would be the result of permission to consolidate, in the absence of restrictive words, certainly where, in the statute conferring the power to consolidate, it is expressly provided that the corporation, together with any corporations with which it should consolidate, should remain a domestic corporation, it would seem that such restriction would place the question beyond controversy.

The question involved in this appeal is essentially different from that presented in *Southern Ry. Co. v. Allison,* 190 U. S., 326. There the plaintiff in error was a Virginia corporation. The contention of defendant in error was that by virtue of the provisions of the statute passed by the General Assembly of this State and the act of the corporation pursuant thereto it became a domestic corporation. The Court held that by filing a copy of its charter with the Secretary of State it did not become a citizen of this State. Assuming that the defendant Atlantic Coast Line Railroad Company is a Virginia corporation, with power conferred by its charter to consolidate with the Wilmington and Weldon Railroad Company, and that, pursuant to the provisions of the act ratified 24 February, 1899, as stated in its report to the Corporation Commission, the two corporations did consolidate, what is the status in regard to citizenship of the consolidated corporation for the purpose of jurisdiction? It is well settled that the Legislatures of two States cannot by any joint legislation create one corporation having a domicile in each State. *Cooley, C. J.,* in *Chicago and N. W. Ry. Co. v. Auditor,* 53 Mich., 79 (at page 91), discussing the status

of corporations chartered by different States, which have consolidated under statutory power, says: "We appreciate very fully the difficulty of determining, under all circumstances, in what light we are to regard the anomalous organizations which are formed by the consolidation of two or more corporations which have received their corporate powers from different sovereignties. * * * It is familiar law that each corporation has its existence and domicile, so far as the term can be applicable to the artificial person, within the territory creating it. It comes into existence, then, by its sovereign will; and, though it may be allowed to exercise corporate functions within another sovereignty, it is impossible to conceive of one joint act, performed simultaneously by two sovereign States, which shall bring a single corporation into being, except it be by compact or treaty. There may be separate consent given for the consolidation of corporations separately created; but when the two unite, they severally bring to the new entity the powers and privileges already possessed, and the consolidated company simply exercises, in each jurisdiction, the powers the corporation then chartered had possessed and succeeds then to its privileges. * * * After the consolidation, each State legislates in respect to the road within its own limits, and which was constructed under its grant of power, as it did before." The learned *Chief Justice* proceeds to say: "It also necessarily follows, from the doctrine maintained by the Federal Supreme Court in respect to the citizenship of corporations * * * where, therefore, two corporations, created in different States, consolidate, though for most purposes they are not thereafter to be separately regarded, yet, in each State, the consolidated company is deemed to stand in the place of the corporation to which it then succeeded, and of its members, and consequently to be a citizen of that

State for many purposes, while, in the other State, it would stand in the place of the other corporation in respect to citizenship there." In *Quincy Bridge Co. v. Adams Co.,* 88 Ill., 615, the same question was presented. *Breese, J.,* said: "The States of Illinois and Missouri have no power to unite in passing any legislative act. It is impossible, in the very nature of their organizations, that they can do so. They cannot so fuse themselves into a single sovereignty and, as such, create a body politic which shall be a corporation of the two States without being a corporation of each State or of either State. * * * The only possible status of a company, acting under charters from two States, is that it is an association incorporated in and by each of the States, and when acting as a corporation in either of the States it acts under the authority of the State in which it is then acting, and that only, the legislation of the other State having no operation beyond its territorial limits." Both these cases are cited with approval by *Thayer, J.,* in *Missouri Pac. Ry. Co. v. Mich.,* 69 Fed. Rep., 753, in which the authorities are reviewed, and it is held that: "A corporation formed by the consolidation of corporations of three different States, pursuant to the laws thereof, is, within each of such States, a corporation of that State; and the Federal courts have no jurisdiction of a suit against it by a citizen of the State on the ground of diverse citizenship."

The conclusion to which all the authorities come, being founded upon the case of *Ohio and Miss. Railroad Co. v. Wheeler,* 1 Black (66 U. S.), 286, is thus stated by Judge Thompson in his valuable and exhaustive article on Corporations, 10 Cyc., 296: "If the consolidated corporation is sued in a State in which one of the constituent corporations is created, defendant cannot have the cause removed from the State Court to the Circuit Court of the United States,

because within that State the corporation is a domestic corporation, and hence a citizen of that State; so that both plaintiff and defendant are in theory of the law citizens of the same State." *Muller v. Downs,* 94 U. S., 444; Moon on Removal of Causes, sec. 129. The law is well stated in Black's Dillon Rem. of Causes, sec. 102, citing *Fitzgerald v. Misso. Pac. Ry. Co.,* 45 Fed., 812: "Although the consolidated corporation bears the same name in the three States, has one board of directors and the same shareholders, and operates the road as one entire line, and is designed to accomplish the same purposes and exercises the same general corporate powers and functions in all the States, it is not the same corporation in each of the States, but a distinct and separate entity in each. It is a corporate trinity, having no citizenship of its own, distinct from its constituent members, but a citizenship identical with each. By the consolidation the corporation of one State did not become a corporation of another, nor was either merged in the other. The corporation of each State had a distinct legislative paternity, and the separate identity of each as a corporation of the State by which it was created, and as a citizen of that State, was not lost by the consolidation. Nor could the consolidated company become a corporation of three States without being a corporation of each or of either. While the consolidated corporation is a unit, and acts as a whole in the transaction of its corporate business, it is not a corporation at large, nor is it a joint corporation of three States. Like all corporations, it must have a legal dwelling place. Every corporation, not created by act of Congress, dwells in a State. This consolidated corporation dwells in three States, and is a separate and single entity in each." *Clark v. Barnard,* 108 U. S., 436.

The General Assembly of this State by Act of 1899, ch.

77, ratified 13 February, 1899, chartered the Atlantic Coast Line Railroad Company of Virginia. The preamble of the act recites the reasons which induced the Legislature to grant the charter, and in section 2 enacts: "The said Atlantic Coast Line Railroad Company of Virginia is hereby authorized and empowered to maintain and operate the railroad which formerly belonged to the Petersburg Railroad Company in this State," etc. It will be observed by reference to this act that the only purpose of granting the charter was to enable the corporation, in connection with a corporation of the same name created by the Legislature of Virginia, to operate the portion of the Petersburg Railroad located in this State. The Virginia corporation of the same name is not "domesticated" under the "Craig Act," Laws of 1899, ch. 62, but a new corporation was created in this State. Without entering into any discussion of the status of a corporation created in this way, it is sufficient to say that while the defendant is described in the complaint as the "Atlantic Coast Line Railroad Company, of Virginia," the summons is served upon the agent of the "Atlantic Coast Line Railroad Company," who, in verifying the petition, so describes himself. The petition is filed by the "Atlantic Coast Line Railroad Company," and in this name the corporation makes its reports to the State Corporation Commission and is referred to in "Poor's Manual," 1899, p. 397, and 1902, p. 199. We do not find that the "Atlantic Coast Line Railroad Company, of Virginia," makes any report to the Commission. It is probably one of the "constituent roads" of the defendant "Atlantic Coast Line Railroad Company," although it does not so appear in the reports, nor is any reference made to chapter 77, Laws of 1899. We notice further that no power is conferred upon the corporation created by that act to consolidate, unless it be found in the charter of

the Petersburg Railroad Company of 1830 and chapter 149, Acts 1893, extending the charter of said corporation. It is true that the complaint alleges that the defendant corporation is a Virginia corporation, operating a railroad in this State. As we have seen, there is no statute which has been called to our attention, or which a diligent examination on our part discovers, authorizing the Atlantic Coast Line Railroad Company to operate in this State otherwise than by consolidation with domestic corporations, nor is any such claim made by the corporation in its reports to the Corporation Commission. As a matter of law, the plaintiff is in error in averring the contrary. The question involved is of far-reaching importance to the corporation and the citizens of the State. We are of opinion that the defendant Atlantic Coast Line Railroad Company, in respect to its "constituent roads," domestic corporations, is a domestic corporation, and that, as between the plaintiff and itself, there is no diverse citizenship entitling it to remove the cause into the Federal Court.

Affirmed.