ARTHUR VANDERBILT ET AL., RECEIVERS OF THE SOUTHERN COTTON OIL COMPANY, v. THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 19 November, 1924.)

**War—Limitation of Actions—Statutes.**

The Federal Transportation Act, placing railroads, etc., under Government control as a war measure during the war with Germany, and the later act releasing them therefrom, did not interfere with the commencement or the prosecution of actions in the State courts between citizens of the same or different States to recover damages for a breach of contract for the sale of goods; the later act expressly limiting the time to two years thereafter; and an action of this character arising during war control is barred by our State statute of limitations after three years (C. S., 404, 405) from the time of their accrual.

APPEAL by plaintiff from judgment rendered by *Pittman, J.,* at February Term, 1924, of JOHNSTON.

On 22 March, 1917, the Southern Cotton Oil Company delivered to defendant, at Selma, N. C., 96,500 pounds of cotton-seed oil, to be transported and delivered to plaintiff at Bayonne, N. J. Defendant delivered only 82,800 pounds of said oil, and this action was instituted by the receivers of the Southern Cotton Oil Company, on 19 May, 1921, to recover of the defendant damages for the failure to deliver the balance of said shipment, to wit, 13,700 pounds. Upon answer filed and issues joined, the jury found, as appears by the verdict, that plaintiff was damaged by the negligence of defendant in the sum of $1,683.17, with interest from 2 April, 1917. It was agreed by attorneys, in open court, that upon certain written admissions the court should answer the third issue, which was as follows:

"3. Is plaintiff's cause of action barred by the three-year statute of limitations, as alleged in the answer?"

The court, being of opinion that as a matter of law, upon the admitted facts, the action was barred, answered the issue "Yes," and signed judgment that plaintiff recover nothing of defendant in the action. To this judgment plaintiff excepted.

The following stipulation appears in the case on appeal settled by the judge:

"By agreement of counsel, in open court, representing both the plaintiff and defendant, the only question at issue in this action is whether or not the plaintiff's cause of action is barred by the statute of limitations. It is admitted that the three-year statute of limitations was properly pleaded in bar of plaintiff's cause of action."

*Charles E. Cotterill and F. H. Brooks for plaintiff.*
*Ed. S. Abell for defendant.*

CONNOR, J. This action was commenced by the issuance of summons on 19 May, 1921. It is admitted that the cause of action accrued on 2 April, 1917. The statute of limitations, therefore, began to run on that date, and more than four years had expired before the action was commenced. The objection that the action was not commenced within the period prescribed by statute was duly taken in the answer. C. S., 404, 405.

The period of time prescribed by the statute of limitations in force in North Carolina, at the date when plaintiff's cause of action accrued, and within which same must be commenced, was three years. C. S., 441.

Attorneys for plaintiff, who challenge the correctness of the holding that plaintiff's cause of action was barred by this statute, in their brief,

say: "The shipment of freight involved was made from Selma, N. C., on 22 March, 1917. Suit was filed 19 May, 1921, or more than three years after the cause of action arose. Without more appearing, the North Carolina statute would, of course, bar recovery. But Federal control of the railways intervened between the time of making shipment and the institution of the suit. It is the position of plaintiff, appellant, that during the period of Federal control (beginning 31 December, 1917, and ending 28 February, 1920) the operation of such North Carolina statute of limitations was suspended by the very terms of a constitutional enactment of the United States Congress, known as section 206 of the Transportation Act of 1920. If such period of Federal control (twenty-six months) be excluded, the suit was filed in ample time."

The North Carolina statute, in force when plaintiff's cause of action accrued, and which was applicable to it, has not been repealed, altered or amended by the General Assembly of North Carolina. It is now, and has been continuously from the accrual of the cause of action to the issuance of summons, a bar to plaintiff's action. The defendant was at all times, during said period, subject to the processes of the courts of this State, and, for the purposes of jurisdiction, was and is now a North Carolina corporation. *McGovern v. R. R.,* 180 N. C., 219; *Brown v. Jackson,* 179 N. C., 363; *Staton v. R. R.,* 144 N. C., 135. The dockets of the courts of this State show that during this period actions accruing prior to 31 December, 1917, were constantly commenced and prosecuted to final judgment in said courts against this defendant by both resident and nonresident plaintiffs.

There was no interruption of the ordinary course of judicial proceedings in the courts of this State which prevented the service of process for the commencement of actions against this or any other defendant. No conditions existed in North Carolina or in the United States such as the Supreme Court of the United States, in *Hanger v. Abbott,* 6 Wall., 532 (18 L. Ed., 939), held, had the effect to suspend, during the Civil War, statutes of limitations in suits "between the inhabitants of the loyal States and the inhabitants of those in rebellion." *U. S. v. Wiley,* 78 U. S., 508 (20 L. Ed., 211).

The sole contention of plaintiff is that the North Carolina statute was suspended during the period of Federal control of railroads, from 31 December, 1917, to 28 February, 1920, by an act of Congress, and that the time between said dates should be deducted from the time which elapsed between the date of accrual of the cause of action and the date of the issuance of the summons.

The Transportation Act, 1920, provides that Federal control of railroads and systems of transportation shall terminate on 1 March, 1920, and that the President shall on said date relinquish possession and con-

trol of all railroads and systems of transportation then under Federal control. Section 206 of said act relates to causes of action arising out of Federal control. Paragraph (f) of said section is as follows: "The period of Federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the commission for causes of action arising prior to Federal control."

The President had taken possession and assumed control of the railroads and transportation systems of the country, under an act of Congress, as a war measure, which had become necessary in the national defense. The United States was at war with a foreign government. The relations of its own citizens with each other were not affected by the existence of war. The conditions during the Civil War, relied upon to sustain the decision of the Supreme Court of the United States in *Hanger v. Abbott, supra,* did not exist during the period of Federal control. The Court there held that "A state of war existing between the governments of the creditor and debtor suspends the right and opportunity of a citizen of one belligerent to sue in the courts of the other, and as a consequence the statute of limitations is suspended during the existence of the war, and that time is not computed in the limitation of the action." This is declared to be law, without regard to any statute. This statute, however, was not enacted to meet such a condition as prevailed at the time the act of Congress, approved 11 June, 1864, was enacted.

In *Stewart v. Bloom,* 78 U. S., 382 (20 L. Ed., 176), the Supreme Court of the United States held that the act of Congress, approved 11 June, 1864, relative to causes of action accruing during the Civil War, applied not only to cases in the Federal courts, but also to cases in the courts of the States, and suspended State statutes of limitation pending in the State courts. *Justice Swayne,* in the opinion filed for the Court, says: "We are of the opinion that the meaning of the statute is that the time which elapsed while the plaintiff could not prosecute his suit by reason of the rebellion, whether before or after the passage of the act, is to be deducted. Considering the evils which existed, the remedy presented, the object to be accomplished, and the consideration by which the lawmakers were governed—lights which every court must hold up for its guidance when seeking the meaning of a statute which requires construction—we cannot doubt the soundness of the conclusion at which we have arrived." Replying to the contention that the statute as thus construed was not warranted by the Constitution of the United States, he says: "The power to pass it is necessarily implied from the powers to make war and suppress insurrection." Plaintiffs were citizens and residents of New York. Defendants were citizens and residents of Louisiana. The suit was brought in the Fourth District Court of New

Orleans, on 16 April, 1866, upon a note dated 10 August, 1860, and due seven months after date. The time prescribed by the State statute for the commencement of the action was five years.

The cause of action in the instant case accrued on 2 April, 1917. Defendant was, on said date and at all times since has been, a North Carolina corporation, for the purposes of jurisdiction. This action was brought on 19 May, 1921, in the Superior Court of North Carolina. This Court had jurisdiction of the action by virtue of the laws of North Carolina. Its jurisdiction was not dependent upon any law of the United States. The time prescribed by the State statute for the commencement of the action was three years. Is the time from 31 December, 1917, to 28 February, 1920, to be deducted and not computed in determining whether three years had elapsed from the accrual of the cause of action to the commencement of this action in the Superior Court of North Carolina by virtue of paragraph 206 (f) of the Transportation Act, 1920, enacted by the Congress of the United States?

Let us follow the light which *Justice Swayne* says every court must hold up for its guidance when seeking the meaning of a statute which requires construction. This statute requires construction by us, for we find that other courts have not agreed as to its meaning. Adopting the reasoning and authorities of some of these courts, we should answer the question presented by this appeal in the affirmative. If we follow other courts, our answer must be in the negative.

By an act of Congress, approved on 29 August, 1916, the President, in time of war, was empowered to take possession and assume control of any system or systems of transportation or any part thereof for the transportation of troops, war materials and equipment, and "for such other purposes connected with the emergency as may be needful or desirable." U. S. Comp. Stat., 1974-A.

On 6 April, 1917, Congress declared "That the state of war between the United States and the Imperial German Government which has thus been thrust upon the United States is hereby formally declared, and that the President be and he is hereby authorized and directed to employ the entire naval and military forces of the United States and the resources of the Government to carry on war against the Imperial German Government, and to bring the conflict to a successful termination all the resources of the country are hereby pledged by the Congress of the United States."

By proclamation, issued on 26 December, 1917, the President, on 28 December, 1917, took possession and assumed control of each and every system of transportation located wholly or in part within the boundaries of the Continental United States and consisting of railroads. Said proclamation includes the following paragraph: "Except with the

prior written assent of said Director (General of Railroads), no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers, and judgments rendered as hitherto until and except so far as said director may by general or special orders otherwise determine." The transportation system and railroads of defendant thus came under Federal control.

Section 10 of the Federal Control Act, approved 21 March, 1918, is as follows: "Carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of the act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

*Justice Brandeis,* in *Missouri Pacific R. R. Co. v. Ault,* 256 U. S., 554 (65 L. Ed., 1087), says: "Thus, under section 10, if the cause of action arose prior to Government control, suit must be instituted or continued to judgment against the company as though there had been no taking over by the Government, save for the immunity of the physical property from levy and the power of the President to regulate suits in the public interest as by fixing the venue or the time for trial. If the cause of action arose while the Government was operating the system, the carrier while under Federal control was nevertheless liable and suable. This means, as a matter of law, that the Government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts." General Order No. 50, issued by the Director General, required that suits upon causes of action arising during Federal control should be brought against the Director General by name, and not otherwise. Suits upon causes of action arising prior to Federal control must be brought against the company.

The Transportation Act, 1920, which includes the paragraph, 206 (f), relied upon by plaintiff, was approved 28 February, 1920. By virtue of this act, Federal control terminated on 1 March, 1920, and the President relinquished possession and control of all railroads and systems of transportation then under Federal control. Thus, certainly, from the date of the accrual of the cause of action, 2 April, 1917, to 28 February, 1920, the statute of limitations (C. S., 411) was in full force, and there

is no contention that during this period the statute was not running against plaintiff and in favor of defendant. Defendant was subject to the processes of the courts of this State, and the plaintiff was warned, by proclamation of the President, acts of Congress and decisions of the courts, that notwithstanding the existence of a state of war between the United States and foreign powers, and notwithstanding the possession and control by the President of the railroad and transportation system of the defendant company, plaintiff might bring its action against defendant, and that upon failure to do so, the action would be barred at the expiration of three years from 2 April, 1917, upon defendant's plea of the statute.

In the enactment of this statute—section 206 (f)—Congress was not providing for a condition such as existed during the Civil War, when the courts of some of the States of the Union were not open to citizens and residents of other States for the commencement and prosecution of actions. The reasons given and authorities cited in support of the decisions of the Supreme Court of the United States in *Hanger v. Abbott* and *Stewart v. Bloom* are not applicable to the proposition presented by this appeal. Congress was not confronted, in 1920, with the evils which existed in 1864. It was not seeking to accomplish by this act the same object it had in view in the enactment of the act of 11 June, 1864. The considerations which moved the lawmakers in 1920 were not the same as those of 1864. At all times during the period of Federal control, the courts of North Carolina, as well as of all the other States, were open, not only to her own citizens, but also the citizens and residents of all her sister States.

The construction of section 206 (f) of the Transportation Act, 1920, urged upon us by the plaintiff, by which this statute would be construed as suspending, retrospectively, State statutes of limitation, as applied to actions brought and prosecuted in the State courts, and of which such courts had jurisdiction under the laws of the States, is inconsistent with the purpose and policy of the Federal Government with respect to actions that had accrued prior to Federal control, as declared in the proclamation of the President and as declared by Congress in the Federal Control Act of 1918. It would require us to hold that Congress, in the very act by which Federal control was terminated and the railroads restored to their owners, had undertaken to legislate about a matter which it had expressly declared its purpose not to affect. The President's proclamation of 26 December, 1917, has not been recalled or rescinded. No order inconsistent with said proclamation had been made by the Director General. The provision of the Federal Control Act, approved 21 March, 1918, has not been repealed. This construction would result in holding that by virtue of the proclamation and the

Federal Control Act no obstacle was interposed to the commencement
and prosecution of actions, and yet that during the very time when
actions could be brought against the carriers, the statutes of limitation
were suspended, and this by virtue of an act passed to terminate Federal
control and restore the railroads to their owners.

It is conceded that the Legislature has power to repeal or suspend
the effect of a statute of limitations before it operates, and to give such
repeal or suspension a retroactive effect. *Pearsall v. Kenan,* 79 N. C.,
472. But "the presumption is very strong that a statute was not meant
to act retrospectively, and it ought never to receive such a construction
if it is susceptible of any other. It ought not to receive such a con-
struction unless the words used are so clear, strong and imperative that
no other meaning can be annexed to them, or unless the intention of
the Legislature cannot be otherwise satisfied." *United States v. Fidelity
and Guaranty Co.,* 209 U. S., 306 (52 L. Ed., 804), cited and approved
by *Allen, J.,* in *Barnhardt v. Morrison,* 178 N. C., 563. In the instant
case the three-year statute had not operated to bar plaintiff's action on
28 February, 1920, and therefore the power of the Legislature to sus-
pend a statute of limitations so as to revive an action which is barred,
is not presented. See *Campbell v. Holt,* 115 U. S., 620 (29 L. Ed., 483),
and *Whitehurst v. Dey,* 90 N. C., 542. If plaintiff's construction, how-
ever, is sustained, the act will apply to a cause of action already accrued,
and against which the statute of three years had been running for nearly
two years and nine months. This construction ought not to be adopted,
"unless the words of the statute are so clear, strong and imperative that
no other meaning can be annexed to them, or unless the intention of
Congress cannot otherwise be satisfied."

The purpose of Congress in enacting the Transportation Act, 1920, is
declared in the title to be "To provide for the termination of Federal
control of railroads and systems of transportation; to provide for the
settlement of disputes between carriers and their employees; to further
amend an act entitled 'An act to regulate commerce, approved 4 Feb-
ruary, 1887, as amended,' and for other purposes." There is nothing
in the act which discloses any purpose to affect by legislation any other
matters.

Section 206 of the act, which includes paragraph (f), has as its sub-
title "Causes of action arising out of Federal control." It does not
purport to deal with any other causes of action, of which courts of law
or equity or admiralty courts have jurisdiction.

Paragraph (a) provides that "Actions at law, suits in equity, and
proceedings in admiralty, based on causes of action arising out of the
possession, use or operation by the President of the railroad or system
of transportation of any carrier (under the provisions of the Federal

Control Act or the act of 29 August, 1916), of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President for such purpose.  Such actions, suits or proceedings may, within the periods of limitation now prescribed by State or Federal statutes, but not later than two years from the passage of this act, be brought in any court which, but for Federal control, would have had jurisdiction of the cause of action had it arisen against such carrier."

Here is a specific reference to "State or Federal" statutes of limitation, and an express provision that causes of action arising during Federal control shall be barred at the expiration of two years from 28 February, 1920.  The effect of this provision is to shorten the period in which such actions may be commenced, when the State or Federal statute applicable is more than two years, whereas paragraph (f), if construed as plaintiff contends, would lengthen the time within which actions arising prior to Federal control must be commenced.  This paragraph is applicable expressly to actions arising out of Federal control and commenced in State or Federal courts.  Congress is here dealing with actions arising out of the "possession, use or operation" by the Government of the railroads of common carriers, upon the ground that the Government is liable and suable on these causes of actions, as held by *Justice Brandeis* in the *Ault case.*·

Inasmuch as Federal control is terminated by the act, and all powers theretofore conferred upon and exercised by the President with respect to these railroads and systems of transportation shall no longer be had or exercised by him, provision is made in this and succeeding paragraphs of the section for the commencement and prosecution of such actions as have arisen out of Federal control, in any court, State or Federal, which has jurisdiction, and for the payment of final judgments, decrees and awards in such actions, suits and proceedings.

Paragraph (c) deals with and provides for complaints for reparation for damages which may be filed with the Interstate Commerce Commission.

Paragraph (f), relied upon by plaintiff as suspending the statute of limitations plead in this action, deals with (1) actions against carriers, and (2) claims for reparation to the Interstate Commerce Commission for causes of action arising prior to Federal control.  The only "actions against carriers" for which the Government has assumed liability, or for which Congress has provided, are actions arising out of Federal control.  These actions may be commenced in State or Federal courts within the time prescribed in paragraph (a), after termination of Federal control, provided such time shall not exceed two years from 28 Feb-

VANDERBILT *v.* R. R.

ruary, 1920. Thus a date is fixed when the Government may ascertain its total liability for actions growing out of the possession, use or operation of the railroads and systems of transportation which were taken over pursuant to acts of Congress enacted as a war measure.

The interstate Commerce Commission was created by Congress before the existence of a state of war between the United States and the Imperial German Government, and continues after the termination of the war. It has jurisdiction to hear and determine claims arising both prior to and during the period of Federal control. The power of Congress to legislate, both as to its jurisdiction and procedure, is unquestioned.

Paragraph (a) prescribes the period of limitations for the commencement of actions against carriers arising out of Federal control. Such periods are the same as those prescribed by State or Federal statutes, provided they shall expire not later than two years after 28 February, 1920. Congress has not undertaken to suspend the statutes of limitation, State or Federal, applicable to actions against carriers arising prior to Federal control. Claims for reparation may be filed with the Interstate Commerce Commission within one year after the termination of Federal control, but the period of Federal control shall not be computed for the commencement of causes of action upon which complaints are filed which arose prior to Federal control.

Paragraph (f) of section 206 of the Transportation Act, 1920, has been relied upon by plaintiffs in actions brought in other jurisdictions as suspending State statutes of limitation in actions against carriers arising prior to Federal control. The construction of this statute has not been uniform, and courts, both State and Federal, have not agreed in their decisions upon the question presented.

In *Bell v. Baker,* 249 S. W., 246, decided 7 February, 1923 (rehearing denied 7 March, 1923), the Court of Civil Appeals of Texas held that the statute applies to actions against carriers in Federal courts under Federal laws only. This was an action for damages arising from personal injuries sustained on 9 February, 1917. The action was commenced on 19 January, 1921. The period of limitation under the Texas statute was two years. *Fly, C. J.,* writing the opinion of the Court, says: "There is nothing in the law that indicates in the slightest that it had any other reference than to the Federal laws, about which Congress is given constitutional authority to make rules. This view is fortified by the fact that the provision applies to actions against carriers or in claims for reparation to the commission. The latter being only before a Federal commission and being linked with actions against carriers, we must conclude that actions against carriers in Federal courts

37—188

are intended. Clearly, actions against carriers in State courts, founded on matters arising before Federal control began, are so utterly beyond the province of Federal control that it will be presumed that no such unwarrantable interference with State laws was intended. Congress had nothing to do with causes of action arising against railroad companies before, as a war measure, the President of the United States was clothed with autocratic powers over the common-carrier systems of America."

In *Georgia Southern & F. Ry. Co. v. Smiley,* 108 S. E., 273, the Supreme Court of Georgia held that section 206 (f) of the Transportation Act, 1920, applies only to Federal courts. The cause of action arose on 11 December, 1917; the action was commenced on 22 June, 1920. The Georgia statute prescribed two years as the period in which actions must be brought. *Hill, J.,* says: "There is nothing in the Federal Act of 1920 which expressly or by necessary implication repeals the authority conferred by the act of 1918 to bring the suit in the State courts according to law."

In *Cravens v. Louisville & N. R. R.,* 242 S. W., 628, the Court of Appeals of Kentucky, in opinion filed 28 February, 1922 (rehearing denied 28 June, 1922), held that the statute is not limited to actions brought in Federal courts, and applies also to actions in the State courts. The cause of action arose on 20 December, 1917; the action was commenced on 17 January, 1919; the one-year statute of limitations was pleaded. *Clay, J.,* citing *Stewart v. Bloom,* 11 Wall., 493 (20 L. Ed., 176), concludes that the statute applies to actions in State courts, and holds that the statute as thus construed is valid and is within the power of Congress as a war measure. This act was passed in 1920, although the armistice had been signed on 11 November, 1918, thus, in the words of President Wilson, addressing a joint meeting of the Senate and House of Representatives, bringing the war to an end. The Court of Appeals of Kentucky had held, in *Louisville & N. R. R. Co. v. Steele,* 202 S. W., 878, *Settle, C. J.,* writing the opinion, which was filed 23 April, 1918, that section 10 of the Federal Control Act, approved 21 March, 1918, did not prevent a litigant from bringing his action against a common carrier in any court of competent jurisdiction.

In *Standley v. U. S. R. R. Administration et al.,* 271 Fed., 794, it is held by *United States District Judge Westenhaver* that the time during Federal control should not be computed in determining whether the plaintiff's action, which accrued 21 July, 1914, was barred by the four-years statute of limitations of Ohio. It was ordered, however, that the action be dismissed as against the Director General, for the reason that it arose prior to Federal control, but leave was given plaintiff to amend his petition as against the Pennsylvania Railroad Company.

In *New York Central R. R. Co. v. Lazarus,* 278 Fed., 900, *Manton, Circuit Judge,* says: "It is contended that section 206 (f) of this act invalidates the period of limitation set forth in the conditions of the uniform bill of lading, and that therefore this action was commenced in time. The argument is, that section 206 (f) applies to all periods of limitations, whether applied by contract, regulation or statute. As the phrase, 'periods of limitation,' is used in these sections of the Transportation Act, we think the words apply to limitations 'now prescribed by the State or Federal statutes.'" This action was brought in the District Court of the United States for the Southern District of New York. The Circuit Court of Appeals reversed the judgment in the District Court, holding that the action could not be maintained because of the provision in the bill of lading. The decision is based upon the holding that section 206 (f) does not apply to a period of time prescribed by contract for the commencement of the action.

In *Hilbert v. Pennsylvania R. R. Co.,* 120 Atl., 778, a compulsory nonsuit was sustained by the Supreme Court of Pennsylvania, because the action was not brought within the time prescribed by the bill of lading. The opinion of the Court, disposing of the suggestion that section 206 (f) of the Transportation Act, 1920, affects the action, concludes with these words: "Hence, as the cause of action did not accrue prior to Federal control, the last-quoted provision has no application, and we need not consider whether it applies to a contractual limitation."

In *Arcadia Mills et al. v. Carolina C. & O. Ry. et al.,* 293 Fed., 693, *Knapp, Circuit Judge,* holds that by reason of section 206 (f) the time during Federal control should be deducted in determining whether an action brought in the United States District Court of South Carolina to enforce an order of the Interstate Commerce Commission is barred. The question as to whether the section is applicable to an action brought in a State court upon a cause of action within the jurisdiction of a State court is not presented.

A careful consideration of the question so clearly presented to us by this appeal leads to the conclusion that the assignment of error is not sustained, either on principle or by the authorities. The construction of section 206 (f) of the Transportation Act, 1920, as set out in this opinion, makes it unnecessary to consider or to discuss the interesting question as to whether, if the construction insisted upon by plaintiff is correct, it was within the constitutional power of Congress, after the virtual repeal of the Federal Control Act of 1918, enacted as a war measure, to enact this statute so construed. "A statute of limitations, strictly so called, excluding, of course, those cases where a title or right may be acquired by prescription, operates generally on the remedy

directly, and does not extinguish the right. The power of the Legislature of each State to enact statutes of limitation and rules of prescription is well recognized and unquestioned. It is a fundamental principle of law that remedies are to be governed by the laws of the jurisdiction where the suit is brought. The *lex fori* determines the time within which a cause of action shall be enforced." 17 R. C. L., Art. Lim. of Actions.

For the reasons stated, and upon the authorities cited therein, we are of the opinion that the judgment should be affirmed, for that there is

No error.