**SANDHILL MOTORS, INC., (formerly West AMC-Jeep, Inc.), Appellant,**

v.

**AMERICAN MOTORS SALES CORPORATION, Appellee.**

**No. 81–1350.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1981.

Decided Dec. 22, 1981.

James B. Rivenbark, Greensboro, N. C. (John W. Kirkman, Jr., Rivenbark & Kirkman, Greensboro, N. C., on brief), for appellant.

James M. Stanley, Jr., Winston-Salem, N. C. (Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on brief) for appellee.

Before WINTER, Chief Judge, and RUSSELL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Sandhill Motors, Inc.[1] sued American Motors Sales Corporation in the United States District Court for the Middle District of North Carolina, alleging diversity and seeking compensatory and punitive damages for breach of contract and tortious conversion. Sandhill was a franchised automobile dealer for American Motors under an agreement dated December 2, 1975 which, as amended, ran for a period of ten years from that date. Sandhill's franchise area was the "Rockingham, North Carolina market area." Rockingham is situated in Richmond County, North Carolina.

A provision of the dealer franchise read: As long as this Agreement shall remain in effect, Dealer shall have the non-exclusive right to purchase from American, and resell, Motor Vehicles and Parts and Accessories.[2]

Sandhill alleged activities by American Motors violative of General Statutes of North Carolina § 20–305(5). The alleged violations stemmed from the sale by American Motors of vehicles directly to the North Carolina Motor Speedway in Rockingham and the appointment in Laurinburg, Scotland County, North Carolina of a new American Motors dealership.[3]

General Statutes of North Carolina § 20–305(5) made it:

unlawful for any manufacturer, factory branch, distributor, or distributor branch, or any field representative, officer, agent, or any representative whatsoever or any of them:

. . . . .

(5) To grant an additional franchise for a particular line-make of motor vehicle in a trade area already served by a dealer or dealers in that line-make unless the franchisor first advised in writing such other dealers in the line-make in the trade area; provided that no such additional franchise may be established in the trade area if the Commissioner has determined, if requested by any party within 30 days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will not support all of the dealerships in that line-make in the trade area; trade areas are those areas specified in the franchise agreement or determined by the Motor Vehicle Dealers' Advisory Board.

That section falls within the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law. § 20–285 et seq. The powers of the Commissioner are outlined in § 20–301:

(a) The Commissioner shall promote the interests of the retail buyer of motor vehicles.

(b) The Commissioner shall have power to prevent unfair methods of competition and unfair or deceptive acts or practices.

(c) The Commissioner shall have the power in hearings arising under this Article to determine the place where they shall be held; to subpoena witnesses; to take depositions of witnesses; and to administer oaths.

(d) The Commissioner may, whenever he shall believe from evidence submitted to him that any person has been or is violating any provision of this Article, in

---

1. Over the course of time covered by the developments giving rise to the lawsuit, Sandhill and its predecessors underwent several changes of name. For ease of identification we refer to them all collectively as "Sandhill."

2. An agreement which would have foreclosed American Motors from making direct sales in the Rockingham market area furthermore would have had to have been in writing. North Carolina Gen.Stat. § 75–4. *Radio Electronics Co. v. Radio Corp. of America*, 244 N.C. 114, 117, 92 S.E.2d 664, 666–67 (1956). No writing complying with that statutory requirement has been alleged.

3. Those facts would not create a cause of action under the North Carolina common law inasmuch as the dealer franchise agreement explicitly provided that it was non-exclusive.

The claim of Sandhill rested squarely on the statute.

addition to any other remedy bring an action in the name of the State against such person and any other persons concerned or in any way participating in, or about to participate in practices or acts so in violation, to enjoin such persons and such other persons from continuing the same.

With respect to hearings before the Commissioner, § 20–305.3 provides:

> In every case of a hearing before the Commissioner authorized under this Article, the Commissioner shall give reasonable notice of each such hearing to all interested parties, and the Commissioner's decision shall be binding on the parties, subject to the rights of judicial review and appeal as provided in Chapter 150A of the General Statutes.

■ The objection of Sandhill on § 20–305(5) grounds to the direct sales to the North Carolina Motor Speedway manifestly is without merit. Those direct sales did not involve establishment of an additional franchise. So far as the grant of the additional franchise in Laurinburg, Scotland County was concerned, for Sandhill to prevail, in any venue, and under any theory, it had the burden of first establishing that the new or additional franchise was "in a trade area already served by a dealer (i.e. Sandhill)." If the Laurinburg franchise was not in a trade area already served by Sandhill, manifestly Sandhill had no viable claim.

We thus confront, at the outset, whether that issue of fact may be litigated, as Sandhill has attempted, in a direct action in court, or whether, inasmuch as the remedy by statute contemplated supervision by the motor vehicles commissioner of steps to limit additional franchises, Sandhill was required first to exhaust administrative reme-

dies. Did Sandhill first have to establish in a hearing before the motor vehicles commissioner that (a) the Laurinburg franchise fell within the trade area already served by Sandhill; and (b), if (a) were answered by him affirmatively, the commissioner would hold that there was reasonable evidence that the market would not support an additional dealership in the trade area? Put another way, did Sandhill, by failing to do so, waive or abandon any claim growing out of the statute?

American Motors, taking the position when the Laurinburg dealership was established that it did not service the same trade area,[4] had given no notice to Sandhill, on formation of the Laurinburg dealership, in October, 1977. However, having learned, nevertheless, in October, 1977, the information that the notice required by statute was designed to provide, i.e., that formation of a Laurinburg dealership was contemplated and, indeed, had taken place, Sandhill on October 21, 1977 requested a hearing before the commissioner and filed a petition with the commissioner on November 28, 1977,[5] but subsequently took a voluntary dismissal. The petition, dated February 27, 1978, was refiled on March 1, 1978 alleging that American Motors represented "that the dealership granted . . . included a sales area comprised of Richmond and Scotland Counties." Sandhill sought the following relief:

> that the Commissioner of Motor Vehicles take such action as is necessary to issue an order under North Carolina General Statute § 20–301 enjoining the creation of a dealership in Scotland County, North Carolina; that an appropriate fine be levied against American Motors Sales Corporation; and for all such other and further

---

**4.** The issue is not one which we are called on to decide. Rather, we determine only that the question was one to be directed to the commissioner of motor vehicles, not to the district court.

On the merits, the fact that American Motors directed Sandhill's attention to numerous possible customers in Scotland County as well as to customers in Richmond County at least presents an issue of fact which would require the taking of evidence to resolve.

**5.** The failure to provide notice has as its sanction the tolling of the thirty day time limit, and permitting the existing dealership at any time to file a request for hearing before the motor vehicles commissioner. *See Smith Cycles, Inc. v. Alexander,* 27 N.C.App. 382, 219 S.E.2d 282 (1975). Whatever its substantive effect, it is plainly confined to relief in proceedings under § 20–285 *et seq.,* § 20–305(5) in particular.

relief to which the petitioner is entitled hereunder.

American Motors answered on May 1, 1978. On August 4, 1978, allegedly because of loss of business, Sandhill terminated its franchise. In December 1978 the motor vehicles commissioner dismissed the petition with prejudice on the grounds that, Sandhill having terminated its franchise, none of the relief available under § 20–305(5) was any longer available, and the commissioner no longer had subject matter jurisdiction.

The case presents difficulties whichever way one turns. Sandhill should certainly have been entitled to a determination by some body empowered to adjudicate the issues (a) as to whether the Laurinburg dealership served the existing Rockingham trade area and (b) if so, whether there would be reasonable evidence that upon the grant of the new franchise the market would not support both the Laurinburg dealership and the Sandhill franchise. The making of such determinations is, however, committed solely and exclusively to the motor vehicles commissioner.[6]

Since that is the case, a North Carolina court would have declined to entertain the action, there having been a failure to exhaust administrative remedies. *E.g., Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979). The action is one based on diversity. The failure to exhaust administrative remedies accordingly is likewise fatal in an action begun in federal court. *E.g., Stoner v. Presbyterian University Hospital*, 609 F.2d 109, 111 (3d Cir. 1979) ("The fortuity of diverse citizenship should not subject a litigant to legal burdens different from those that a state court would impose."); *Edelson v. Soricelli*, 610 F.2d 131, 134 (3d Cir. 1979) ("The obvious answer to the question in these cases is that appellants, as federal plaintiffs seeking medical malpractice damages, may not have rights superior to state citizen plaintiffs because a fundamental notion underlying *Erie* is that a federal court sitting in diversity merely provides an impartial forum, not a different set of legal rules."); *DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287, 291 (4th Cir. 1980) ("We recognized as much in *Szantay v. Beech Aircraft Corp., supra*, 349 F.2d [60] at 63 (4th Cir. 1965) when we held that a state procedural rule must be followed in a diversity case if it is 'intimately bound up with the state right or obligation.'")

It may well be that it was erroneous for the commissioner to have dismissed following the termination of Sandhill's franchise. The argument might well have been made that, even with the franchise terminated, for Sandhill to succeed in making out a claim at law for damages, it would first have to obtain the necessary findings and conclusions from the motor vehicles commissioner to establish its cause of action. Sandhill could have argued that to achieve a just result, to assure a remedy if a right had been violated, jurisdiction continued in the commissioner. Without in any way deciding, we may suppose that the law would have been so interpreted, had Sandhill pursued the point, either before the motor vehicles commissioner, or on appeal from his decision. *Cf. In re Peoples*, 296 N.C. 109, 250 S.E.2d 890 (1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979).

Unfortunately, however, Sandhill did not make such a contention. Rather, it appears to have accepted without further contest the dismissal for lack of subject matter jurisdiction.

Since that is so, an essential ingredient for any action at law is lacking. Accordingly, the district court was correct in dismissing for failure to exhaust administrative remedies.

AFFIRMED.

**6.** Sandhill has acknowledged that the issues cognizable before the commissioner included "whether: (1) the new franchise was in Sandhill's trade area, and (2) if so, whether the trade area would support both franchises." Appellant's Reply Brief, p. 6.