**RICHARDS & ASSOCIATES, INC., a Kentucky Corporation, Plaintiff,**

v.

**Leslie N. BONEY, D.R. Allen & Son, Inc., Leslie N. Boney, Architect, William J. Boney, Charles H. Boney, Leslie N. Boney, Architect, Inc., Defendants.**

**No. 83–89–Civ–7.**

United States District Court, E.D. North Carolina, Wilmington Division.

March 28, 1985.

Charles B. Robson, Jr., Raleigh, N.C., Karl W. Leo, Greensboro, N.C., for plaintiff.

F. Stuart Clarke, Fayetteville, N.C., Joseph C. Moore, Jr., Raleigh, N.C., for defendants.

## MEMORANDUM AND ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This cause comes on before the undersigned United States District Judge on the defendants' motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court has conducted a hearing on these motions at which time argument was received and after considering the entire record and the parties' briefs, the court makes the following order.

## CLAIMS BARRED BY THE STATUTE OF LIMITATIONS

In May, 1976, the plaintiff Richards & Associates, Inc., contracted with the Board of Commissioners of New Hanover County, North Carolina, to install the plumbing for the additions and renovations to the New Hanover Memorial Hospital in Wilmington, North Carolina. The defendant Leslie N. Boney and his corporation was the architect for the project, and the defendant D.R. Allen & Son, Inc., was the general contractor. The plaintiff contracted with the county to provide all of the plumbing services.

In this action the plaintiff claims damage as a third party beneficiary resulting from the alleged breach by the defendants Boney and Allen of their contracts with New Hanover County. The plaintiff also alleges professional malpractice against Boney for its architectural services to New Hanover County, and against Allen for negligently performing its duties during the construction project. Summary judgment is proper and will be allowed as to all of the defendants on all of the pending claims.

■ North Carolina law requires that actions in contract and professional malpractice be brought within three years of the discovery of injury. NCGS 1-52(1), (15) and 1-15(c). Statutes of limitations require that the litigation be initiated within the prescribed time or not at all. *Congleton v. The City of Ashboro*, 8 N.C.App. 571, 174 S.E.2d 870 (1970); *Bolick v. Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982). When this court is sitting based on its diversity jurisdiction, the court must apply the statutes of limitations of the appropriate state, in this case, North Carolina. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

■ The plaintiff filed its first complaint on October 21, 1983. Since the defendants have pled the statutes of limitations, the plaintiff has the burden to show some act of the defendants occurring after October 21, 1980, which caused the plaintiff's damage under the causes of action alleged in the complaint. *Parker v. Harden*, 121 N.C. 57, 28 S.E. 20 (1897). In an affidavit dated May 27, 1980, Thomas K. Garland, Assistant Vice President of Richards & Associates, Inc., said that the plaintiff had completed its duties under the contract and that there were no liens or other obligations outstanding. The acts of the defendants, if any, causing the plaintiff's damage were therefore done prior to May 27, 1980, by the plaintiff's own statement. Therefore any claims arising out of the negligent management and operation of the construction project are barred by the statute of limitations.

## CLAIM FROM BONEY'S ADVICE

■ The plaintiff claimed damages of $519,000 against the County Commissioners for delays in the construction project. The defendant Boney advised the Commissioners not to pay the final $37,000 due to the plaintiff on the contract until they had settled the $519,000 claim. The Commissioners acted on the advice and settled the dispute with the plaintiff for $50,000 and also paid the $37,000. Richards now alleges that the architect's advice to the Commissioners was malpractice and it claims damages against the architect Boney. The architect's advice to the Commissioners, given after October 21, 1980, the relevant date for the statute of limitations, did not give Richards an independent cause of action against the architect.

First, assuming that the architect had some professional duty to the plaintiff during the course of the construction, that professional duty as an architect must have concluded by the time the plaintiff submitted a certificate of completion. The architect may have had continuing duties to contractors still on the job when the plaintiff had finished, but he had no duty to the plaintiff. The plaintiff has failed to show a duty.

Second, assuming that the architect had a duty to the plaintiff after the plaintiff had completed his work, the advice was not architectural and did not breach an architectural duty.

Third, the architect's advice to the commissioners did not proximately cause the plaintiff any damage. Richards failed to show that it relied on Boney's advice to the Commissioners when it settled its $519,000 claim against them. He failed to allege that Boney made any assurances or recommendations to him about the settlement. Therefore, the architect's advice did not proximately cause any damage.

Fourth, the plaintiff had no new damages as a result of the alleged malpractice involving the settlement. Any damages to the plaintiff came from delay in the construction project, and those damages had fully ripened by the time the plaintiff had completed the work.

Having failed to show a duty, breach, causation and damages, the plaintiff has no cause of action against the architect arising out of the settlement of its claim against the commissioners.

### RULE 8(a)(2) OF THE STATE RULES OF PROCEDURE

The court is convinced that the running of the statutes of limitations warrants the granting of defendants' motion for summary judgment. A question arises as to whether a basis exists for dismissing the complaint alleging professional malpractice because of the plaintiffs' request for $600,000 in damages. North Carolina law prohibits prayers for relief in professional malpractice actions which ask for a sum certain in excess of $10,000. Rule 8(a)(2) North Carolina Rules of Civil Procedure.

■ Under *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Hanna v. Plumer*, 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965), this court must strive for consistent results between the state and federal courts, provided it can do so without violating a federal rule. A federal court in a diversity action must apply the substantive law of the state in which it sits. The *Erie* rule prevents forum shopping and prevents the unfairness of differing results depending on where the case was filed.

In *Szantay v. Beech Aircraft Corporation*, 349 F.2d 60 (1965), the Fourth Circuit developed a three-part analysis for use when applying *Erie* to cases in this circuit.

1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.

2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling. (footnote omitted)

3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.

*Id.*, 63, 64.

South Carolina had a door-closing statute which provided that an action against a corporation created under the law of another state could be brought in South Carolina by a nonresident only when the cause of action or the subject of the action was situated in South Carolina. Residents of Illinois sued a Delaware corporation for negligent manufacture of an airplane that was serviced in South Carolina and crashed in Tennessee.

As to the first prong, the parties in *Szantay* agreed that the statute was procedural. On the second prong, the court found that because the right arose under Tennessee law, the South Carolina door closing statute was not intimately bound up with the right. On the third prong of the analysis the court found that the state's policies would not be greatly harmed by refusing to apply the door closing statute. The court said the principles of *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) were "intended to prevent 'inequitable administration of the laws' working unfair discrimination against citizens of the forum state." The court found that refusing to apply the door-clos-

ing statute would not hurt the citizens of South Carolina.

The court found federal countervailing considerations in the policy of avoiding discrimination against non-residents and in the full faith and credit clause. Further, had the plaintiffs merely qualified as administrators of the decedents' estates, they could have sued in South Carolina courts. On the basis of this analysis, the Fourth Circuit refused to apply South Carolina's door-closing statute to the federal courts in that state.

The Fourth Circuit addressed this issue in a different context in *DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287 (4th Cir.1980). The Virginia Malpractice Act requires a plaintiff to give prior notice of his intention to file a medical malpractice action and provides for medication and decision by a panel of physicians and lawyers appointed by the Chief Justice of the Commonwealth. The District Court dismissed the plaintiff's case for failure to give the prefiling notice. He appealed arguing the Virginia statute should not be applied to him because he was a citizen of New Jersey and the action was in federal court.

The Fourth Circuit ruled, "The Act's notice requirement and provision for panel review at the instance of either party were so 'intimately bound up' with the rights and obligations being asserted as to require their application in federal courts under the doctrine of *Erie, supra.*" *Id.* at 290. The court further found, "The contention that the jury may be influenced by the admission of the panel opinion is simply not an 'affirmative countervailing federal consideration' within the meaning of *Byrd* [*v. Blue Ridge Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) ]." *Id.*

The court concluded,

The provision for admission of the panel opinion is intimately related to Virginia's alteration of the substantive cause of action. It is intimately related to Virginia's strong policy of encouraging and promoting pretrial mediation. Because it enforces and implements those interests, the admission provision is applicable in this diversity case.

*Id.* at 291.

In *Sandhill Motors, Inc. v. American Motors Sales Corp.*, 667 F.2d 1112 (4th Cir.1981), the court applied the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law, which required exhaustion of administrative remedies before filing suit, to diversity actions in federal court.

This court, in applying the *Szantay* analysis to the case at bar, finds that North Carolina Rule 8(a)(2) is procedural, but it is "intimately bound up" with a substantive state policy. The North Carolina General Assembly enacted the rule to respond to "a national medical malpractice crisis" and the adverse publicity which sometimes accompanies frivolous or exorbitant claims. *See Harris v. Maready*, 311 N.C. 536, 319 S.E.2d 912 (1984).

Under the third prong of the *Szantay* analysis, even if it were determined that the provision was not "intimately bound up" in the right to bring the suit, comity dictates that this court apply the rule because there are no countervailing federal considerations. There is no conflict between Federal Rule 8 and Rule 8(a)(2) of the North Carolina Rules of Civil Procedure. Federal Rule 8 does not purport to address professional malpractice actions or limit the monetary relief requested. Neither does the federal rule purport to displace the North Carolina rule.

Since there is no conflict between the two rules, an *Erie* analysis indicates that the state law should govern, and improper pleading would be a separate basis upon which this court could dismiss the complaint.

### Summary

Because any actions by the defendants, which would give the plaintiff a cause of action, took place more than three years before the plaintiff filed this action, all defendants' motions for summary judgment are ALLOWED.