Clayton STOKES, and Loretta Stokes, husband and wife, Plaintiffs,

v.

SOUTHEAST HOTEL PROPERTIES, LTD. and Commercial Management Corp., Defendants.

No. 3:94CV23P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Dec. 21, 1994.

Edmund W. Holt, Thomas G. Reed, III, Pensacola, FL, for plaintiffs.

R. Keith Johnson, Matthew R. Joyner, Rayburn, Moon & Smith, P.A., Charlotte, NC, for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Senior District Judge.

THIS MATTER is before the Court on Defendant Commercial Management Corp.'s ("CMC") motion, filed July 21, 1994, for summary judgment as to Plaintiff Clayton Stokes on the grounds that his claims are barred by the statute of limitations. Also before the Court is Plaintiffs' motion, filed September 21, 1994, to transfer this action to the Northern District of Florida pursuant to 28 U.S.C. § 157(b)(5) and 28 U.S.C. § 1404 and Plaintiffs' response to Defendant's summary judgment motion. On October 13, 1994, Defendant CMC filed a reply to Plaintiffs' response and a request for an oral argument upon their summary judgment motion and the Plaintiffs' transfer motion. In the alternative, Defendant requests that this Court rule on the summary judgment motion prior to the venue transfer motion. Also before the Court is Plaintiffs' motion, filed July 1, 1994, pursuant to Fed.R.Civ.P. 12(f), to strike the Defendant's third affirmative defense.

The Court has reviewed the motions for summary judgment and for transfer of venue, the parties responses and objections to those motions, and the relevant legal authorities. Based upon its review of this case, the

Court makes the following findings of facts and conclusions of law.

### FACTS

According to the Complaint, on July 21, 1990, Plaintiff Clayton Stokes was the victim of an armed robbery and aggravated battery which occurred at the Days Inn motel located in Pensacola, Florida. At the time of the incident Defendant Southeast Hotel Properties Limited Partnership (SHPLP) owned and defendant Commercial Management Corporation operated the Days Inn in Pensacola.

The Plaintiffs are citizens and residents of the State of Mississippi. Defendant CMC is a corporation with its office and principal place of business in Charlotte, North Carolina.[1] Both Defendants are the subject of separate bankruptcy proceedings in the United States Bankruptcy Court for the Western District of North Carolina.[2] On September 30, 1992, plaintiff Clayton Stokes filed a motion in the Bankruptcy Court for relief from the automatic stay to prosecute his personal injury claim against CMC. On November 19, 1992, the Bankruptcy Court granted relief from the stay in the case of CMC and SHPLP. On January 31, 1994, plaintiffs initiated this personal injury action by filing their Complaint in this District Court. Subsequently, on September 9 and 14, 1994, Plaintiff Loretta Stokes received relief from the automatic stay *nunc pro tunc* to January 31, 1994, in order to allow her to proceed with her derivative civil action for loss of consortium against CMC and SHPLP.

### DISCUSSION

As framed by the parties there are essentially two issues presently before the Court. The first argument is the subject of Defendant CMC's motion for summary judgment and Plaintiffs' motion to strike Defendant

CMC's third affirmative defense, and centers upon whether or not Plaintiff Clayton Stokes' claims are barred by the statute of limitations. Resolution of that issue requires the Court to determine whether an action will be maintained if it is barred by the statute of limitations of the forum North Carolina. The second issue concerns the Court's determination pursuant to 28 U.S.C. § 157(b)(5) and whether this litigation is proper for transfer pursuant to 28 U.S.C. § 1404(a).

### A. *Choice of Law and the Statute of Limitations*

■ As to the first dispute, Stokes argues that the statute of limitations of the state where the action arose, Florida, rather than the statute of limitations of the forum state, North Carolina, apply to his personal injury claims. Here, both parties recognize that in a diversity case, the federal court must apply the conflict of law rules that the forum state would apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941).

In fact, Plaintiffs state in their brief that "this Court is compelled to apply the North Carolina choice of law rules in this action. Under the North Carolina choice of law rules, Courts sitting in North Carolina apply the substantive law of the state where the cause of action accrued. In this case, courts sitting in North Carolina would apply Florida's substantive law." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, September 21, 1994, at 3). Beyond this partially correct assertion, both parties drift astray from the proper legal analysis of this choice of law problem.

Plaintiff goes on, arguing that Florida law adopted the "most significant contents" rule, as set forth in Restatement (Second) of Conflict of Laws § 145 (1971), as a means of

1. Defendant Southeast Hotel Properties Limited Partnership is no longer an active business in accordance with a confirmed Chapter 11 Plan. SHPLP did have its place of business in Charlotte, North Carolina at the time of the incident.

2. According to Plaintiffs' amended motion to strike, filed October 26, 1994, the limitation period was tolled as to SHPLP, under the automatic bankruptcy stay provisions as recognized by N.C.Gen.Stat. § 1–23, for a period of 462 days from August 15, 1991 until Stokes was granted relief from the stay on November 19, 1992. Accordingly, neither plaintiffs' claims are barred as against SHPLP. The remainder of this Order will deal with plaintiffs' claims as against defendant CMC.

resolving choice of law problems in tort cases. *Bates v. Cook, Inc.,* 509 So.2d 1112 (Fla.1987); *Bishop v. Specialty Paint Co.,* 389 So.2d 999 (Fla.1980) (in tort actions involving more than one state, all substantive issues should be determined in accordance with the law of the state having the most significant relationship to the occurrence and the parties). Plaintiff then concludes, in apparent accord with *Bates,* that the significant relationship test should be used to decide conflicts of law involving statutes of limitation and that such application to the facts of this matter requires the conclusion that Florida is the place with the most significant relationship. Thus, according to the plaintiff, Florida's statute of limitations should be applied. In a nutshell, plaintiff contends that Florida treats statutes of limitation as substantive rather than procedural and therefore, in accordance with North Carolina's choice of law rule, Florida substantive law, including the statute of limitations, applies in this case.

Unfortunately, however, Plaintiff's entire characterization reveals only half of this state's choice of law rule. The omitted portion of the rule mandates that the federal court must also apply the procedural rules of North Carolina. Clearly, if both states characterize statute of limitations as procedural then there is little confusion on this issue and lawyers as well as courts seem to agree that the forum state's statute of limitations would apply. In fact, this is exactly the argument made by the Defendant based, in part, upon a North Carolina Appeals Court ruling in *John C. Stokes, Jr. v. Wilson & Redding Law Firm,* 72 N.C.App. 107, 323 S.E.2d 470 (1984).[3]

In an attempt to bolster this argument, Defendant's briefs go to great lengths to convince this Court that Florida law recognizes statute of limitations as procedural, *citing to Colhoun v. Greyhound Lines, Inc.,* 265 So.2d 18, 20 (Fla.1972), and more recently, *Aerovias Nacionales De Columbia v. Tellez,* 596 So.2d 1193, 1195 (Fla.App. 3 Dist.1992), and most pointedly to *Pledger v. Burnup & Sims, Inc.,* 432 So.2d 1323, 1329 (Fla.App. 4 Dist.1983).

The Defendant correctly notes that neither *Bishop, Pledger* nor *Bates* expressly overruled the Florida Supreme Court's decision in *Colhoun,* and moreover, those cases are limited because they deal exclusively with application of Florida's borrowing statute with specific reference to the "significant relationships" test as a better rule for *determining where the cause of action arose.*

In fact, the Florida Supreme Court expressly held that "[o]ur ruling does not do violence to Florida's borrowing statute. We simply hold that the significant relationships test should be employed to decide in which state the cause of action 'arose.' The borrowing statute will only come into play if it is determined that the cause of action arose in another state." *Bates,* 509 So.2d at 1115. In a nutshell, the Florida Courts carved an exception to the traditional *lex loci delicti* rule under which a cause of action sounding in tort arises in the jurisdiction where the last act necessary to establish liability occurred and replaced it with the significant relationships test.

**3.** The Court is sympathetic to Defendant's use of *Stokes* to support the proposition that an analysis of Florida's characterization of the statute of limitations is required under North Carolina law. The North Carolina Court of Appeals worded their analysis of this issue in a way which seemingly leads to that conclusion. That Court said:

Under North Carolina choice of law rules, we apply the substantive law of the state where the cause of action arose and the procedural rules of North Carolina. (citation omitted). Under Florida law the Florida statute of limitations is a procedural rule. *citing Colhoun, infra.* Therefore, a North Carolina state court hearing the plaintiff's Florida medical negligence action would apply its own statute of limitations.

*Stokes,* 72 N.C.App. at 113, 323 S.E.2d 470. This suggests that the results obtain because of the way Florida characterized the statute of limitations. This Court, however, need not render an opinion on the merits of the *Stokes* decision or its apparent lack of clarity on this issue because it is well-settled that a state's highest court is the authoritative interpreter of a state's law. Thus, if a state's highest court has a decision on point, federal courts must apply it because *Erie* holds that federal courts are to apply state common law principles. Here, the North Carolina Supreme Court has clearly spoken to this issue on at least two occasions, *see Sayer, Boudreau* and discussion, *infra.*

That this is the extent of the Florida Supreme Court's holding in *Bates* is made clear by the Court's reference to the Restatement (Second) of Conflicts of Laws §§ 142 and revision (1971, revised 1986), which states:

> An action will be maintained if it is not barred by the statute of limitations of the forum unless the action would be barred in some other state which, with respect to the issue of limitations, has a more significant relationship to the parties and occurrence.

*Bates*, 509 So.2d, at 1114, *citing*, 54 U.S.L.W. 2597 (May 27, 1986) (emphasis added).

██ Properly viewed the *Bates* decision merely provides that, Florida Courts, in deciding whether or not to apply the borrowing statute, first must decide where the cause of action arose and in making that determination the Court would apply the significant relationships (*Bishop*) test rather than the looking to where the last act necessary to establish liability occurred (*Colhoun*). If the significant relationship analysis reveals that the cause of action arose in the foreign state then the borrowing statute would apply. If, however, the significant relationship analysis revealed that the cause of action arose in Florida then the Florida statute of limitations would apply. In other words, unless there is a dispute concerning the applicability of Florida's borrowing statute which emanates from the question of determining where a cause of action arose, this Court finds that under Florida law statutes of limitations generally remain procedural matters to which the law of the forum is applicable.[4]

██ More importantly, despite this seemingly helpful conclusion, the above circumstance and analysis is wholly dissimilar from and inapplicable to the present situation where the cause of action indisputably occurred in Florida, the foreign state. Hence, there is no need to conduct a *Bates* type analysis under North Carolina law because Florida's statute of limitations is longer than North Carolina's, therefore, the North Carolina borrowing statute is, in any event, inapplicable. Furthermore, as discussed more fully below, there is no need to look to Florida law at all for it is North Carolina's characterization of statutes of limitations as procedural which carries the day in this case. Simply put, North Carolina courts ordinarily apply the North Carolina statute of limitations. Thus, this Court concludes that a North Carolina Court would apply its own limitation statute in determining the timeliness of plaintiff's claims.[5]

As alluded to previously, the Court is puzzled by the characterization and resolution of the choice of law and limitations issue suggested by the parties in this case. Using their analysis a precarious situation arises when deciding the question of what state law the federal court looks to, assuming *arguendo*, that the foreign state characterizes statute of limitations as substantive and the forum state characterizes them as procedural.

Summarizing the parties positions in this case, the Plaintiff argues that Florida treats statute of limitations as substantive and, therefore, the Florida statute of limitations applies. On the other hand, Defendant argues that Florida law treats limitations as procedural and, therefore, North Carolina law applies. In both instances, the parties have looked exclusively to Florida's characterization of statutes of limitations to resolve

---

4. This Court recognizes that there is another long recognized and well-settled exception to this general rule. When an entirely new right of action is created by statute, and the same statute provides the limitation of time within which the action must be brought, then such limitation of time is not like an ordinary statute of limitation merely affecting the remedy, but it enters into and becomes a part of the right of action itself.... *See Gillies v. Aeronaves De Mexico*, 468 F.2d 281, 285 (5th Cir.1972) (citations omitted) (also recognizing that Florida follows the traditional rule that a statute of limitations is procedural for the purposes of choice of law requiring the *lex fori* to be applied).

5. A limited exception to this rule is provided by the North Carolina's "borrowing statute." *See* N.C.Gen.Stat. § 1–21 (Michie 1992). By its terms the statute applies only where (1) the cause of action arose in another state, and (2) the law of that state would bar the action before the running of the North Carolina limitations. As noted *supra*, because Florida's limitations law would not bar the action before the running of the North Carolina limitations, the borrowing statute is inapplicable.

the issue. In the Court's opinion this approach is erroneous.

■ Justice Frankfurter explained that "[m]atters of 'substance' and matters of 'procedure' are much talked about in the books as though they define a great divide cutting across the whole domain of law. But, of course, 'substance' and 'procedure' are the same key words to very different problems.... Each implies different variables depending upon the particular problem for which it is used." *Guaranty Trust Co v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). Despite these differences, however, it is clear that the predominant consideration in diversity cases is not of drawing a fine line of distinction between substance and procedure, but whether a suit involving state created rights will result in substantially the same outcome that it would had it been brought in the state court. *Rios v. Drennan*, 209 F.Supp. 927, 930 (E.D.N.C. 1962).

Given the difficulty of devising black letter rules which are satisfactory to cover all situations, the Court ought not be surprised at the problems encountered by the parties here. As Dean Prosser said, "the realm of the conflict of laws is a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in strange and incomprehensible jargon. The ordinary court, or lawyer, is quite lost when engulfed and entangled in it." 51 Mich.L.Rev. 959, 971. Hopefully, this Court has properly traversed the "quaking quagmire" and negotiated the "dismal swamp."

■ As its first point of departure the court notes that:

> In a conflict of laws situation, a court must determine at the outset whether the problem presented to it for solution relates to ... a matter of substance or procedure, in order to refer to the appropriate law; that is, the court initially must ... go through the process of determining the nature of the problem, because otherwise it will not know which choice-of-law rule to apply to the case. This process is generally called characterization.

16 Am.Jur.2d, *Conflict of Laws* § 3 (1979). Of course, this characterization itself presents a problem because the court still must resolve the further question as to what law is to be applied in the characterization process. In response, the text instructs that:

> it is usually held that characterization is to be made in accordance with the law of the forum, and a federal court in a diversity of citizenship case is bound by the classification given to a question by the law of the state in which it is sitting.... [and] matters of procedure are governed by the law of the forum, and the forum court ... determines whether a particular matter is to be classified as procedure or substance for conflict of laws purposes by applying its law.

*Id.* at § 3. This process of "characterization" is essential because North Carolina, like many states, applies different choice of law rules to the different areas of the law.

■ So, in deciding what substantive law applies, one must first look to the forum state's choice of law statute. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *see also, The Rules of Decision Act*, 28 U.S.C. § 1652 (1966). A federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state, even when the action is brought under the law of a different state. *Dow Chemical Corp. v. Weevil–Cide Co., Inc.*, 897 F.2d 481, 484 (10th Cir.1990), *citing Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985).

■ The legal logic behind the rule is simple. Because statutes of limitation are deemed to affect only the remedy and not the substantive right, they are deemed procedural for choice of law purposes. As a result, the governing statute is usually that of the forum where the remedy is sought and not the statute of the place where the action arose. As a further consequence the statute of the forum may bar the remedy even though the action is not barred in the jurisdiction where it arose. Finally, insofar as

the application of the forum state's conflict of laws rules depends on the distinction between matters of substance and matters of procedure, the forum state's classification of such matters applies. 32 Am.Jur.2d *Federal Practice and Procedure* § 281 (1982).

Accordingly, a review of North Carolina law is appropriate. When sitting in diversity cases, this court must apply the substantive law of North Carolina as announced by the North Carolina courts. *Brendle v. General Tire and Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974); *Smith v. Cessna Aircraft Company*, 571 F.Supp. 433, 435 (M.D.N.C.1983). As mentioned above, this includes the choice of law rules of the state in which it sits. *Klaxon*, 313 U.S. 487, 61 S.Ct. 1020. As to Plaintiff's tort claims, the North Carolina choice of law rule is to apply the *lex loci delicti* to all substantive questions. *see* Wurfel, *Choice of Law Rules in North Carolina*, 48 N.C.L.Rev. 243, 247 (1970); *Smith*, 571 F.Supp. at 435.

Here, it is undisputed that the alleged injury occurred in Florida, therefore North Carolina courts would apply that state's law to determine all substantive questions regarding Plaintiff's personal injury claim. However, this does not terminate the characterization inquiry. As noted by the Federal District Court in *Smith*, North Carolina courts have fashioned a different rule in determining which statute of limitation applies to a particular cause of action. *Smith*, 571 F.Supp. at 435. That distinct rule was announced by the North Carolina Supreme Court in *Sayer v. Henderson*, 225 N.C. 642, 643, 35 S.E.2d 875 (1945), and states that:

> The statutes of limitation have been uniformly held by this Court, and so far as we know by other courts, to be governed by the law of the forum.... The plea of the statutes of limitation is a plea to the remedy and consequently the *lex fori* must prevail. [citations] ' "A statute of limitations, strictly so called, ... operates generally on the remedy directly, and does not extinguish the right. The power of the Legislature of each State to enact statutes of limitation and rules of prescription is well recognized and unquestioned. It is a fundamental principle of law that remedies

are to be governed by the laws of the jurisdiction where the suit is brought. The *lex fori* determines the time in which a cause of action shall be enforced." 17 R.C.L., Art. Lim. of Actions.' *Vanderbilt v. Atlantic Coast Line Railroad Company*, 188 N.C. 568, 580, 125 S.E. 387 (1924).

*Sayer v. Henderson*, 225 N.C. at 643, 35 S.E.2d 875; *see also, Byrd Motor Lines, Inc. v. Dunlop Tire and Rubber Corp.*, 63 N.C.App. 292, 297, 304 S.E.2d 773, 777 (1983); *Boudreau v. Baughman*, 322 N.C. 331, 340, 368 S.E.2d 849, 857 (1988) (*citing Sayer*, holding that ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover). Further, these holdings are in accord with the principle purposes of a statute of limitations which is to afford security against stale demands. *See Congleton v. The City of Asheboro*, 8 N.C.App. 571, 174 S.E.2d 870 (1970). Such statutes operate inexorably without reference to the merits of plaintiff's cause of action and the court is without discretion when considering whether a claim is barred by the limitations statute. *Id.*

Applying these principles to the case now before it, this Court concludes that Plaintiff Clayton Stokes' claims are barred by the statutes of limitation that apply under the law of the forum North Carolina. *See, Smith*, 571 F.Supp. at 435.

The Fourth Circuit has recognized and accepted this type of analysis. In *Sokolowski v. Flanzer*, 769 F.2d 975 (4th Cir. 1985), conducting the identical analysis under the similarly structured Maryland law, the Fourth Circuit Court stated that

> In tort actions, Maryland adheres to the traditional substantive-procedural conflict of laws dichotomy whereby the law of the state where the tort occurred governs substantive matters while the law of the forum state governs procedural concerns. (citations omitted). In determining whether a law is substantive or procedural, the federal district court accepts the characterizations placed on the involved rule by the state. (citation omitted).... the resolution of this issue appears simple because

under Maryland law statutes of limitation are generally considered procedural.

*Id.* at 978. And again, in *Barry v. Donnelly*, 781 F.2d 1040, 1041 (4th Cir.1986), analyzing Virginia's conflicts of laws rules, the Fourth Circuit noted that

> Under *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the district court was bound to apply the conflicts of laws rules of the jurisdiction in which it sat, here Virginia. In that state, questions concerning statutes of limitations are deemed to be procedural and as such are controlled by the law of the forum. (citation omitted).

*Barry v. Donnelly,* 781 F.2d at 1042. Accordingly, because the forum state North Carolina deems its statutes of limitations to be procedural, this Court must treat them as such and apply them in this case.

 North Carolina law requires that an action to recover for personal injuries negligently inflicted must be commenced within three years from the date on which the action accrues. *See* N.C.Gen.Stat. § 1–52(5); *see also, Sheppard v. Barrus Constr. Co.,* 11 N.C.App. 358, 181 S.E.2d 130 (1971); *Stamey v. Rutherfordton Elec. Membership Corp.,* 249 N.C. 90, 105 S.E.2d 282 (1958). The cause of action accrues when the wrong is complete. *Wilson v. Crab Orchard Dev. Co.,* 276 N.C. 198, 171 S.E.2d 873 (1970). Statutes of limitation require that the litigation be initiated within the prescribed time or not at all. *Congleton v. The City of Asheboro, supra; Bolick v. Barmag Corp.,* 306 N.C. 364, 293 S.E.2d 415 (1982); *Richards & Associates v. Boney,* 604 F.Supp. 1214, 1216 (E.D.N.C.1985). Since this suit was commenced more than three years after the alleged assault and battery took place, Clayton Stokes is barred from recovering for any alleged negligence by the Defendant CMC.

 This Court is confident that had it allowed the motion for summary judgment

to go forward to the Florida District Court without being decided the result would be the same.[6] It is well settled that a change of venue from one Federal District Court to another is generally not to be accompanied by a change in the choice of state law to be applied, and even after a case is transferred to another district the laws of the state of the transferor court (including its conflict of laws rules) continue to apply to the action. *See* 16 Am.Jur.2d *Conflict of Laws* § 6; *see also, Ferens v. John Deere Co.,* 494 U.S. 516, 524, 110 S.Ct. 1274, 1280, 108 L.Ed.2d 443 (1990); *Goad v. Celotex Corp.,* 831 F.2d 508 (4th Cir.1987) (No due process violation where Virginia Court applied Texas statute of limitations subsequent to transfer, since defendants had no right to have Virginia's limitation period apply to them and could claim no surprise at having Texas statute applied in case which was originally filed in Texas). Similarly, Plaintiffs here have no right to have Florida's limitation period apply to them and certainly cannot claim surprise as they filed the action here in North Carolina.

 Plaintiffs also make a superficial and self-serving argument that "[h]ad they been allowed to do so, plaintiffs would have commenced this action in Florida and the statute of limitations limitations issue could not now be raised." However, despite Plaintiffs' protestations, the statute of limitations issue, which bars plaintiffs claims, is an issue because plaintiff did, in fact, commence this lawsuit in the Western District of North Carolina, and therefore, plaintiffs' claims are subject to the procedural laws of North Carolina. As discussed below, the Court is unaware of any expressed or implied mandate in § 157(b)(5) which requires filing a complaint or commencing a lawsuit in the District Court in which the bankruptcy is pending. The Plaintiff further asserts that "[t]his case is before this Court now only as a *procedural matter until such time as the* determination required by 28 U.S.C. § 157(b)(5) has been made."[7] Here, again,

---

**6.** The Court has found a similar analysis applied in several other jurisdictions. *See, e.g., Mackey v. Judy's Foods, Inc.,* 867 F.2d 325, 328 (6th Cir. 1989); *Ross v. Johns–Manville Corp.,* 766 F.2d 823, 826 (3d Cir.1985); *Santana v. Holiday Inns,*

*Inc.,* 686 F.2d 736, 737–38 (9th Cir.1982); *Crase v. Astroworld, Inc.,* 941 F.2d 265 (5th Cir.1991).

**7.** The Court finds that this characterization is not wholly inaccurate because had the Plaintiff filed

Plaintiff demonstrates a disconnect between what has actually transpired in this action and what he would like to believe are his still remaining options based on his apparent misreading of § 157(b)(5).

The fact is this case is before the Court because Plaintiff requested and was granted relief from the automatic stay by the Bankruptcy Court on November 19, 1992, so that he might "commence a civil action in the U.S. District Court, Western District of North Carolina, Charlotte Division" against the Defendants to determine liability and the amount of Stokes' unliquidated claim for personal injuries received July 21, 1990. Over fourteen months later on January 31, 1994, Stokes filed the instant personal injury diversity lawsuit in this Court. Plaintiff offers no explanation why he did not, in the first instance, move the bankruptcy court for relief from the stay in order to proceed with this action in a Florida court. Second, plaintiff offers no reason why, instead of filing the Complaint in this Court, he did not simply petition this Court pursuant to 28 U.S.C. § 157(b)(5) for a determination of which forum his personal injury case would be tried in. In any event, the Court finds plaintiff's strongly-held but erroneous belief that he had to file his lawsuit in this District cannot now exempt him from the procedural mandates of this jurisdiction.

In reaching this conclusion the Court first looks to the expressed language of the statute at issue. Title 28 U.S.C. § 157(b)(5) provides that:

> [t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy is pending.

28 U.S.C. § 157(b)(5) (West 1993) (emphasis added). Plaintiff strenuously argues that "[commencement of this action in North Carolina was not a choice made by plaintiffs; it was required by 28 U.S.C. § 157(b)(5) ...]" (Plaintiff's Memorandum of Law Opposing Defendants' Motion for Summary Judgment, at 2). Plaintiff also asserts that a determination pursuant to Section 157(b)(5) has yet to be made by this Court.[8] On this latter point the Court agrees and, for the reasons provided below, the Court will transfer plaintiffs' remaining claims to the Northern District of Florida. On the former point, however, the Court finds Plaintiff's argument is largely without merit.

The language of Section 157(b)(5) is silent as to where an action must be filed or commenced, it merely provides that the District Court in which the bankruptcy case is pending shall determine which district court, either itself or the court in which the claims arose, shall try the case. Clearly other possibilities exist which undercut plaintiff's interpretation of the statute. What of the tort or personal injury case filed in state court prior to a debtor filing for bankruptcy? Under such circumstances the Plaintiff, after the stay is lifted, will be privileged to continue the action in the state court, or, if he chooses, to commence an action in the appropriate federal district court. If the action is renewed in the state court, the debtor has the right to remove to federal court based upon his status as a debtor under Title 11 of the United States Code. And, if the debtor chooses to remove, plaintiff may petition the district court to do one of three things, (1) preside over the personal injury action; (2) transfer the action for resolution in the district court in which the claim arose; or (3) abstain from hearing the action in favor of the state court pursuant to 28 U.S.C. § 1334(c)(1). *See In re Littlejohn Colombus*

his action elsewhere or petitioned this Court to do so, the § 157(b)(5) forum determination would have been more or less procedural in nature. However, as noted, this matter is not before this court solely for such determination, but rather because the lawsuit was filed here.

8. The Court notes that Plaintiff did not petition this Court for a § 157(b)(5) determination until filing its September 21, 1994 motion to transfer.

The Court also notes that this motion was filed after Defendants moved for summary judgment on statute of limitations grounds. Quite candidly, the timing of plaintiff's transfer motion and passing of nearly 9 months from the time the Complaint was filed in this lawsuit suggests to the Court that Plaintiff was content with his forum selection until he learned that the statute of limitations would bar his claims.

*Hudgins,* 102 B.R. 495, 498 (Bankr.E.D.Va. 1989).

■ This Court is convinced that, pursuant to 28 U.S.C. § 157(b)(5), these three procedural forum-selection options are the only ones available in all personal injury tort and wrongful death claims against debtors subject to bankruptcy proceedings in the District Court in which the bankruptcy case is pending. The Court is assured, in part, by the Sixth Circuit Court of Appeals opinion in *In re White Motor Credit,* 761 F.2d 270 (6th Cir.1985), which has taken the view that the District Court has the authority to leave such tort cases in the various state and federal courts in which they are pending notwithstanding the language of 28 U.S.C. § 157(b)(5) stating that the District Court shall order that such cases be tried in U.S. District Court. The statute clearly contemplates that cases may have been filed or commenced in courts other than the district court in which the bankruptcy is pending. From this interpretation, which is premised in part on the Legislative purpose as expressed by Senator Dole, the Sixth Circuit concluded that "the district court has the authority to leave tort cases in the courts in which they are pending for liquidation there." *In re White Motor Credit,* 761 F.2d at 273.

The Fifth Circuit also discussed this same aspect of Section 157(b)(5) in *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824 (5th Cir.1993), holding that:

> [f]rom our review of the relevant materials, the legislative purpose, and the effect of the language used to achieve that purpose, we conclude that § 157(b)(5) was intended to confer new power upon the district court in which a bankruptcy is pending to qualify the choice of venue made by the plaintiff....

*Id.* at 834. The Court's use of the word "qualify" suggests that the district court has the power to modify the plaintiff's choice of venue based upon the existence of the bankruptcy proceeding. Here again, the Court clearly contemplates a situation where plaintiff has brought the action in some other court and section 157(b)(5) merely enlarges the bankruptcy district courts' power to fix venue.

Lastly, this same interpretation of the scope of Section 157(b)(5) was pronounced by the Fourth Circuit in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The Court held that:

> We, therefore, have no difficulty in finding that the district judge's authority to fix venue of personal injury tort actions against the debtor exists under § 157(b)(5), irrespective of the district in which such controversy is pending.

In reaching this conclusion, the Fourth Circuit noted that:

> The purpose of this later statute was, as Congressman Kastenmeier declared, to centralize the administration of the estate and to eliminate the "multiplicity of forums for the adjudication of parts of a bankruptcy case."

*Id.* at 1011, *citing,* 130 Cong.Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.C.C.A.N. at 579.

■ This Court can discern nothing in the language or purpose of the statute to warrant the conclusion that in enacting this statute the Congress intended to prevent a party from filing their personal injury lawsuit in a district or state court other than the bankruptcy district court. The statute does nothing more than equip the bankruptcy district court with additional discretionary power to handle all claims should such a course be in the interests of justice. This authority is required in light of the very real considerations that support a centralization of the administration of the bankruptcy estate in order to develop a reasonable plan of reorganization for the debtor which will work a rehabilitation of the debtor and, at the same time, assure fair and non-preferential resolution of all other claims. In sum, the Court finds that Plaintiff did choose this forum and must now live with the consequences of that selection.

B. *Mrs. Stokes' loss of consortium claim is also barred*

■ According to the parties, the second dispute to be resolved by the Court in this

case centers upon Plaintiff's choice of forum or as he might have it, lack of choice, which, as noted above, he maintains results from his adherence to the provisions of Title 28 U.S.C. 157(b)(5) and his desire to now have this action transferred to the Northern District of Florida. Having finally been asked by plaintiff to do so, this Court will forthwith determine, in accordance with § 157(b)(5), which district court should try this case. However, although not raised by the parties in their briefs, for the reasons stated *infra,* the Court is compelled to first address the procedural bar to Mrs. Stokes' claims as against CMC.[9]

Application of the statute of limitations to Mrs. Stokes' claims as against CMC, although somewhat more disconcerting, obtains the same result.[10] Here again the substantive-procedural dichotomy rears its head and this Court must apply North Carolina's choice of law rules to decide which state law ought apply to a derivative claim for which the source claim is barred by the statute of limitations of North Carolina.

 As noted earlier, *supra* at n. 3, the State's highest court is the best authority on its own law. Unfortunately, no North Carolina Court has explicitly answered the question now before this Court. However, lack of a ruling by a State court does not terminate the inquiry. The United States Supreme Court has reaffirmed *Klaxon* on several occasions and held that federal courts in diversity actions should determine the conflict of law principles likely to be applied by the forum state's highest court and follow the same law that would be applied there. *See Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (emphasis added). In this respect, the federal court may be said to be, in effect, sitting as a state court. *See* Erwin Chemersky, *Federal Jurisdiction* § 5.3 (1989). Accordingly, this Court will attempt to determine the conflict of law principles likely to be applied by the North Carolina Supreme Court on this issue.

 On this score, the Court concludes that a North Carolina court applying its own choice of law rules would characterize application of the statute of limitations to derivative claims through the source claims as a matter of procedure.[11] That being the case, North Carolina procedural law prevails and, for the reasons provided below, Mrs. Stokes' derivative claims are similarly barred. In reaching this conclusion the Court relies upon the North Carolina cases which have articulated the procedural nexus between personal injury and wrongful death source claims and their respective derivative claims. In particular, the Court finds the North Carolina Supreme Court's language in *Nicholson v. Chatham Memorial Hospital, Inc.,* 300 N.C. 295, 266 S.E.2d 818 (1980), most persuasive. That Court required that a spouse's loss of consortium be "joined" with any suits the other spouse may have instituted to recover for personal injuries. *Id.* at 304, 266 S.E.2d 818. This Court believes that the compulsory joinder of claims in this manner is clearly illustrative of procedural treatment. This is further evidenced by the North Carolina Rules of Civil Procedure which require that "those who are united in interest must be joined as plaintiffs or defendants." N.C.R.Civ.P. 19(a) (Michie 1992).

 More significantly, this procedural rule has been applied by the North Carolina

---

**9.** In their Answer Defendants do raise the statute of limitations as a defense to "plaintiffs'" claims. Therefore, in accordance with North Carolina law, it is proper for this Court to consider that defense as against Mrs. Stokes. *See Iredell County v. Crawford,* 262 N.C. 720, 138 S.E.2d 539 (1964).

**10.** The Court views this issue as more problematic merely because Mrs. Stokes' claims if treated wholly separate from her husband's are probably not barred by the North Carolina statute of limitations as the automatic bankruptcy stay was not lifted with respect to her claims until mid-September, 1994, *nunc pro tunc* to January 31, 1994.

However, as discussed below, such separate treatment of her claims is unavailable, as a matter of procedure, for Mrs. Stokes.

**11.** By the term "procedure" is meant the mode of procedure by which a legal right is enforced, as distinguished from the substantive law which gives or declares the right. Procedure is the machinery for carrying on the suit, including pleading, process, evidence, and practice. Matters dealing with the conduct of the lawsuit are procedural, and everything else substantive. *See* 16 Am.Jur.2d *Conflict of Laws* § 3, n. 25 and 26.

courts in the loss of consortium context. In *Mrosla v. Feldman,* 90 N.C.App. 261, 368 S.E.2d 39 (1988), the Court of Appeals held that since plaintiff's claim for loss of consortium derived from his wife's cause of action for her personal injuries, plaintiff was united in interest with his spouse and thus a necessary party to her action. Accordingly, this Court is again bound by the view that matters of procedure are governed by the forum's law and that treatment of a spouse's derivative claims for loss of consortium is, at least with respect to joinder and application of the statute of limitations, a matter of procedure in this state.

■ Having decided that a North Carolina court would treat this issue as procedural, the Court believes a further study of North Carolina law regarding loss of consortium claims is appropriate. As an initial point, the Court's review of the Complaint in this case reveals that Mrs. Stokes' loss of consortium claim is, in fact, a derivative of her husband's personal injury claim. Notably, Plaintiffs' themselves properly characterized her claim this way stating that:

> Plaintiffs' complaint alleges a cause of action for personal injury sustained by plaintiff Clayton Stokes as the result of an armed robbery and aggravated battery while a guest on the premises of the Days Inn at 710 North Palafox Street, Pensacola, Florida, on July 21, 1990, *and for plaintiff Loretta Stokes' derivative claim for loss of consortium.*

Memorandum in Support of Plaintiffs' Motion to Transfer, at 2. (emphasis added). There are various legal implications when a claim is derivative rather than primary. Generally, derivative claims are treated differently because they are based on injury to another. It is generally recognized that, while loss of consortium is a direct injury to the spouse who has lost the consortium, a cause of action for loss of consortium is derivative in the sense that it is occasioned by injury to the spouse through negligence of another.

■ In a procedural context, the derivative claim for loss of consortium is a mere *incident to a cause of action and not the subject of an action itself.* In North Car-

olina, derivative claims for loss of consortium are dependent upon the injured spouse's right to recover and are, accordingly, governed by the statute of limitations of the source claim. As noted *supra,* the required nexus between one spouse's loss of consortium claim and the other spouse's personal injury claims was first specifically announced by the North Carolina Supreme Court in *Nicholson v. Chatham Memorial Hospital, Inc.,* which held that:

> a spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suits the other spouse may have instituted to recover for his or her personal injuries.

*Id.* at 304.

■ This same nexus was recognized more recently in the "wrongful death" context by the North Carolina Court of Appeals in *King v. Cape Fear Memorial Hospital, Inc.,* 96 N.C.App. 338, 385 S.E.2d 812 (1989), which held that:

> Plaintiff additionally contends her complaint stated a claim for loss of consortium. Once again, however, her action is barred. Although the spouse of a deceased victim may maintain an action for loss of consortium due to the negligence of a third party, such an action is available only when it "is joined with any suit the other [deceased] spouse may have instituted to recover for his or her personal injuries." [*citing, Nicholson,* 300 W.C. at 304, 266 S.E.2d 818]. As stated previously, the only action available to plaintiff's deceased husband was one for wrongful death through his personal representative. Since that action was barred by the two-year statute of limitations, plaintiff's claim for loss of consortium was likewise precluded.

*Id.* 96 N.C.App. at 342, 385 S.E.2d 812. Not unlike the situation faced by the North Carolina Court of Appeals in *King,* this Court concludes that since plaintiff's husband's personal injury negligence claim was barred by the three-year statute of limitations, his wife's claim for loss of consortium is likewise precluded.

In sum, Mrs. Stokes' cause of action for loss of consortium is derivative of Mr. Stokes' direct cause of action for negligence against the defendant CMC. Consequently, because Mr. Stokes' cause of action is barred by the statute of limitations, Mrs. Stokes' cause of action must also fail. *See Hinson v. Owens–Illinois, Inc.*, 677 F.Supp. 406, 407 n. 1 (D.S.C.1987).

Therefore, the Court finds that both Clayton Stokes' personal injury claim and Loretta Stokes' loss of consortium claim are barred by the statute of limitations and, therefore, Defendant CMC's motion for summary judgment must be granted as to all claims against them.

■ Lastly, the Court has determined in accordance with 28 U.S.C. § 157(b)(5) and 28 U.S.C. § 1404(a) that what remains of this lawsuit, plaintiffs' claims against SHPLP, shall be tried in the Northern District of Florida.

■ As a preliminary matter, the Court notes that the Courts powers under § 157(b)(5) in no way abrogates the long-standing doctrine of *forum non conveniens*, as codified under 28 U.S.C. § 1404(a). *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d at 833. Furthermore, as Plaintiff correctly notes, in the context of a § 157(b)(5) determination, the Court must balance the competing interests, i.e., protect the interests of the plaintiff without creating an unadministrable situation for the estate. *In re UNR Industries, Inc.*, 74 B.R. 146 (N.D.Ill.1987).

■ On this point, Defendants argue that the § 157(b)(5) decision has already been made by the Bankruptcy Court pursuant to a local rule referencing certain matters to the Bankruptcy Judge. This argument is completely without merit. The decision where a personal injury claim will be adjudicated is clearly reserved for attention of the district court. It is clear that "personal injury tort" and "wrongful death" claims are "non-core" proceedings outside the jurisdiction of bankruptcy judges. *See* 28 U.S.C. § 157(b)(2)(B); *In re White Motor Credit* 761 F.2d at 272. Defendants also contend that it is a waste of judicial resources and not in the interests of justice to transfer this case essentially because plaintiff chose this forum and only seeks to transfer the action to Florida so that Florida's longer statute of limitations might apply.

This Court finds that no matter which district court were to try what remains of this case, the North Carolina statute of limitations would apply and the Stokes' claims would therefore be barred as against CMC. However, Clayton Stokes' personal injury claims for negligence and Loretta Stokes' claim for loss of consortium remain viable as against Defendant SHPLP and, notwithstanding plaintiff's original choice of forum, the Court finds that the interests of convenience and justice would best be served by the transfer of this case from the Western District of North Carolina to the Northern District of Florida.

These interests are accurately and persuasively presented in plaintiff's motion for transfer. First, transferring this case to the Northern District of Florida will not create an unadministrable situation for the estate of SHPLP. Second, the plaintiffs assert that their witnesses will include members of the Pensacola Police Department and former employees of the Days Inn, all of whom are presumed to be Florida residents. Furthermore, the Court notes that (1) plaintiffs residence is closer to the Florida jurisdiction; (2) the sources of proof are in Florida; (3) compulsory process for the attendance of unwilling witnesses may not be available to plaintiffs if the trial is held in Charlotte; and, (4) the costs to plaintiffs of having willing witnesses travel from Pensacola, Florida to Charlotte, North Carolina would be unnecessarily expensive. Lastly, since North Carolina choice of law rules require that the substantive laws of the state where the claim arose apply to non-procedural matters, the Florida District Court is likely more familiar with Florida state law and, for all the above reasons, seems more properly suited to try this case. Accordingly, the Court will transfer this matter to the Northern District of Florida.

**NOW, THEREFORE, IT IS ORDERED** that Defendant CMC's motion for summary judgment be, and hereby is, **GRANTED** as

to all claims of both Clayton and Loretta Stokes.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to transfer be, and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion to strike Defendants' third affirmative defense be, and hereby is, **DENIED as moot.**

A judgment will be filed simultaneously with this Memorandum of Decision and Order.